## CITY OF INDIANAPOLIS *v.* AMERICAN CONSTRUCTION COMPANY.

[No. 21,775.   Filed November 28, 1911.]

1. MUNICIPAL CORPORATIONS.—*Sewer Assessments.—Failure to Pay. —Reductions.*—A provision in a notice to contractors for a proposed sewer that defendant city would not be responsible for any uncollectible assessments against property owners, has no

application to deficits caused by a reappraisement of benefits and a consequent reduction in the assessments for such sewer. p. 514.

2. MUNICIPAL CORPORATIONS.— *Sewer Assessments.— Contracts.— Deficits.*—Where the board of public works of a city of the first class under §8722 Burns 1908, Acts 1905 p. 219, §117, decides that the special benefits accruing to property owners will equal the cost of a proposed sewer and a contract is let for the construction of such sewer, the city is liable for any deficit caused by the failure of appraisers subsequently appointed on petition to the superior court, by interested landowners, as permitted by §8725 Burns 1908, Acts 1907 p. 563, to assess the benefits at such a sum as to cover the cost of such sewer, such statute providing that such "board shall have the power to order the payment of such excess out of any funds which may have been appropriated to its use by" the council, and that such council shall make the necessary appropriation. pp. 515, 516, 517, 518.

3. MUNICIPAL CORPORATIONS. — *Sewer Assessments. — Reappraisement.—Final Judgment.*—Under §8725 Burns 1908, Acts 1907, p. 563, providing that the report of appraisers appointed on petition of an aggrieved lot owner to the circuit court shall be "final and conclusive on all parties thereto," no appeal can be taken. p. 518.

4. MUNICIPAL CORPORATIONS.—*Sewer Contractors.—Ignorance of Law Does Not Excuse.*—Contractors, as well as cities, are required to take notice that a city is not bound by a contract made in excess of its statutory powers. p. 518.

5. MUNICIPAL CORPORATIONS.—*Sewer Assessments.—Benefits to City.—Statutes.*—Section 8725 Burns 1908, Acts 1907, p. 563, providing that the board of public works of a city of the first class shall determine what benefits if any, will accrue to the city on account of the construction of a proposed sewer, and that such board may not pay more than $5,000 for any one improvement, unless pursuant to a special ordinance, authorizes such board to pay such sum, at least, on any deficit accruing because of a reduction in benefits assessed on petition for a reappraisement. p. 520.

6. MUNICIPAL CORPORATIONS.—*Sewer Assessments.—Deficits.—Actions to Recover.—Mandamus.*—A sewer contractor may maintain an action for a breach of contract, and recover a judgment against a city, and may compel the payment of such judgment by mandamus. p. 521.

From Marion Circuit Court (18,780); *Charles Remster,* Judge.

Action by the American Construction Company against the City of Indianapolis. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Joseph B. Kealing, Merle N. A. Walker, Newton J. Mc-Guire* and *John F. Engelke,* for appellant.

*William J. Henley, F. E. Matson* and *E. E. Gates,* for appellee.

MORRIS, C. J.—Appellee, a corporation, sued appellant for a sum alleged to be due to it from the city under a contract for the construction of a district sewer. Appellant demurred to the complaint for the alleged insufficiency of facts. This demurrer was overruled, defendant declined to plead further, and judgment was rendered for plaintiff for $20,709.03. From that judgment, defendant appeals.

The only error assigned is the overruling of the demurrer to the complaint.

The complaint alleges that the city of Indianapolis is a municipal corporation of the first class; that on July 10, 1907, by and through its board of public works, it adopted a resolution ordering the construction of a certain district sewer; that bids for the construction of the work were received on October 7, 1907, and as appellee's bid was the lowest and the best, it was accepted, and on May 13, 1908, the contract was awarded to appellee for the agreed price of approximately $145,000; that immediately thereafter appellee commenced the work, completed it to the entire satisfaction of the city engineer and of the board, and it was accepted; that after it was completed and accepted, on August 25, 1909, the board adopted a preliminary assessment roll, in which the total contract cost of the improvement was primarily assessed against the property in the drainage district, and no part of the cost was assessed against the city; that at the final hearing the board decided that the properties in the district, primarily assessed as aforesaid, were specially benefited in the several amounts respectively assessed against them in the preliminary assessment, and thereupon adopted and confirmed said roll as the complete and final assessment roll, by which the entire cost was as-

sessed against the property benefited. At the same time the board allowed a final estimate in favor of appellee in the sum of $145,277.36.

The complaint is long, and avers facts showing that the board, in all of the proceedings, from the adoption of the preliminary resolution for the construction of the work, to the completion of the final assessment roll, followed the provisions of §§8722, 8724, 8725 Burns 1908, Acts 1905 p. 219, §§117, 119, and Acts 1907 p. 563. It also avers facts showing that plaintiff performed all the stipulations required of it by the terms of the contract sued on, and performed all things required of it by the terms of the statute.

Prior to the date of the preliminary hearing, the city engineer filed with the board his estimate of the total cost of the work, in the sum of $146,000. After the preliminary hearing on August 7, 1907, the board decided that the drainage district was properly bounded, and that the special benefits to the property within the district, and the benefits to the city, would be equal to the estimated cost of the improvement, and ordered the sewer constructed.

The notice to bidders contained the following provision: "That under no circumstances shall the city of Indianapolis be, or be held, responsible for any sum or sums due from said properties or the owners for said work, or for the collection thereof, or for the payment of any bond, bond certificate or certificates issued to said contractor in payment for such work, except for such moneys as shall have actually been received by said city from the assessments for such improvement."

Within ten days thereafter, certain property owners of the district, pursuant to the provisions of §8725, *supra,* filed their petition in the Superior Court of Marion County, averring that the several amounts of their respective assessments were excessive, and the court appointed appraisers to reassess their benefits. The appraisers reduced these assess-

ments in the total sum of $20,709.03. These reductions in assessments were certified by the board of public works to the city treasurer, who thereupon corrected the final assessment roll to conform to the reductions made.

The total reductions in the assessments, made by the appraisers, represented the difference between the contract price, and the total amount of assessments against the property, as shown by the corrected assessment roll. Appellee subsequently demanded this sum from appellant, and the demand was refused.

Appellant contends that municipal corporations have only such power as the statutes confer, and that these powers must be strictly construed; that under such rule the corporation is only liable for the amounts collected by it from the property owners, because the contractor accepted the contract with full knowledge of the statutory restrictions, and of the provision in the notice to contractors, hereinbefore set out, ''that under no circumstances shall the city * * * be * * * responsible for any sum * * * due from said properties,'' etc.

Appellant also contends that under the statute the board had no power to order an improvement of this character that would create a liability against the city in an amount over $5,000, and if there is a liability against the city in the latter amount, appellee's remedy was a proceeding by mandamus.

It is manifest that the provision in the notice to bidders, whereby the city disclaimed responsibility for sums due on uncollected assessments against property owners, or

1. for the payment of bonds or certificates, is not pertinent to the issues in this cause. Appellee is not seeking to hold the city liable for any assessment made against any property, but is looking only to such property to the extent that assessments were made against it. Neither is appellee complaining of any breach of a contract for the payment of any bond, but has presumably accepted all bonds

issued as full payment, to the extent of the assessments thereby represented. Appellee's demand is for that part of the contract price, for which the board failed to provide either assessments, bonds or city funds, and, therefore, this provision in the notice can have no application to the facts in issue.

Section 8725, *supra,* after providing for the final hearing on the primary assessment roll, which can be made and filed only after the work is completed, directs that at such hearing the board shall determine whether the several lots and parcels of land, "primarily assessed, as aforesaid, are specially benefited in the amounts, respectively, assessed against them in the preliminary or primary assessment aforesaid." The statute authorizes the board to sustain or modify, in whole or in part, the preliminary assessment, and to increase or reduce the assessments according to the special benefits received. Then follows this provision: "The board shall also have the power to determine what part, if any, of the benefits resulting from such improvement accrue to said city, and any amount so found shall be assessed against such city on said roll and paid out of funds appropriated to the use of said board for such purpose by the common council: *Provided, that not more than $5,000 shall be paid out of the city funds for any one improvement, unless pursuant to an ordinance specially appropriating the same for such specific improvement.* The said board shall complete said roll and render its decision to all such special benefits by modifying or confirming said assessment roll, showing the amount of special benefits opposite each name and description as aforesaid, and against such city, if it be found that such city is specially benefited as aforesaid, and when completed said assessment roll shall be delivered to the department of finance of said city." (Our italics.) This is followed by a proviso that gives any property owner the right to petition the circuit or superior court to appoint three appraisers to reassess his benefits,

and makes the reassessment of such appraisers conclusive. *Randolph* v. *City of Indianapolis* (1909), 172 Ind. 510. This section further provides that *"if it be found in such report* [of appraisers] *that the assessment against such lot or tract is excessive, then the said board shall have the power to order the payment of such excess out of any funds which may have been appropriated to its use by the common council of such city.* * * * The cost of any such proceedings, including the compensation of such appraisers, shall be paid by the party complaining of such assessment, unless the said assessment is reduced ten per cent by such appraisers. * * * In case such assessment shall be reduced ten per cent or more in such proceeding, such costs and expenses shall be paid * * * out of any funds appropriated by the common council for that purpose, *and such common council shall make all necessary appropriations to enable said board to make all payments provided for in this section."* (Our italics.)

The proper construction of the italicized parts of the statute just quoted, in connection with the other provisions of the statute, is the principal ground of contest between the parties to this appeal.

It is contended by appellee that the provision that not more than $5,000 shall be paid out of the city treasury for one improvement, unless pursuant to an ordinance of the city council specially appropriating it, in nowise bars appellee from recovering the contract price of the work, under the facts here alleged; that this proviso was intended by the legislature only as a check on the board of public works in its action preliminary to the letting of the contract for the construction of the work; that if, before letting the contract, the board ascertains that the construction of the work will involve a liability against the city of more than $5,000, then it is the duty of the board to halt, until the city council makes an appropriation; but in the absence

of an affirmative finding by the board, before the letting of the contract, that the liability of the city would probably exceed the sum of $5,000, the contractor's rights under his contract cannot be cut down by the action of the appraisers in reducing the assessments against the property owners. This view was adopted by the lower court in passing on appellant's demurrer.

We think the lower court did not err in its decision. It does not appear that the board exceeded its statutory powers in any respect in deciding to make the improvement, or in letting the contract. Pursuant to the terms of the statute, it adopted the preliminary resolution for the work, and, after the preliminary hearing, decided that the district was properly bounded, that the special benefits to the property in the district and the benefits to the city would be equal to the estimated cost of the improvement, confirmed the resolution, advertised for bids for the contract, and, thereafter, let the contract. The statute does not require that on this preliminary hearing the board shall determine the amount of benefits to property owners, or the amount of benefit to the city, but only requires that it must find that the aggregate benefits are equal to the estimated cost. If at this time, however, the board was of the opinion that the city would incur a liability of over $5,000, it was its duty to submit the matter of an appropriation to the council; but if the board entertained any such opinion, no finding thereof appears. In the absence of anything to the contrary, the court must presume that the board acted in good faith, and did not intend to violate the law. Indeed, its subsequent action in finding that the special benefits to the property in the district were as much as the contract price, would support the inference that the board honestly believed, when the contract was let, that the entire cost of the work would be borne by the property owners of the district. The fact that after the work was fully con-

structed, appraisers did, pursuant to the authority of the statute, reduce the assessments made by the board, in nowise affected the power of the board to do what it did.

Under the statute, only two sources were available for the payment of the cost of the work—the property owners and the city treasury. The liability of the property owners was expressly limited by the amount of the special benefits to their property, and the final determination of their assessments was the last thing to be ascertained by a re-assessment by appraisers, to which the contractor was not a party, and which was to be made after the work was completed, and was accepted by the city. The report of the appraisers was final. However erroneous it might be, or however unjust to the city or property owner, there was no appeal. *Randolph* v. *City of Indianapolis, supra.*

In this case, the report reduced the assessments more than $20,000, and if the city is not liable therefor the contractor cannot receive the contract price of the work, which it has, presumably, earned, but must lose an amount equal to the reduction of the board's assessments made by the appraisers.

Of course neither the contractor nor the city can be excused for failing to know the law, or to know that the city is not bound by any contract in excess of its statutory powers. But what did the legislature intend by the act?

Surely it was contemplated that improvements should be made at the cost thereof plus the lowest contractor's profits that could be secured by free competition. The work must be completed before the assessments against the property are determined. It is scarcely conceivable that in letting contracts of this character it was intended that the contractor must run the risk of losing sums equal in amount to the reduction in the assessments that might be made by the appraisers subsequently appointed by the

court. Such theory would make contracts of this sort of such a speculative character, and so calculated to injure the public, that, on grounds of sound public policy, they should not be recognized, unless the language of the statute excludes any other hypothesis. The presumption is that this contract was let at a just price. The contractor must secure this price, or the city must secure a benefit for which no equivalent was rendered. The law no more absolves the city from the obligations of common honesty than it does an individual. It makes it the duty of the board honestly to assess the benefits to the property in the taxing district. It gives the contractor no voice in this, and no legitimate influence can be exerted by him on the judgment of the board in making the assessments. And so with the judgment of the appraisers in making the reassessment. Yet, if the contractor must lose a part of his pay for labor and materials honestly furnished, in case the appraisers cut down the assessments, the inevitable result must finally be the secret interference of contractors with the judgments of boards, and of appraisers, in making assessments and reassessments.

Lottery speculation has long been prohibited by law. The theory of appellant would make public improvement contracts so speculative that the resultant evils would differ more in extent than in their inherent character from those of the lottery, and we do not accept appellant's theory as tenable. The contract was valid when made. The statute confers no power on the board to impair its obligations. The contingency of this deficit arose from the law, and entered into and became a part of the order for the improvement, and the provision in the act with reference to an appropriation by the council, where the deficit is over $5,000, cannot affect the rights of the contractor, where, as here, there was no affirmative finding by the board, before the letting of the contract, that the discrepancy would be more than that sum.

This conclusion would be justifiable if the section of the statute in controversy did not contain the proviso that in case the appraisers, on reassessment, find the assessments excessive, the board shall have the power to order the payment of the excess out of city funds appropriated. Courts are not permitted to disregard plain provisions of a statute, but must, if possible, give effect to every word found in a legislative enactment. This provisions of the section shows that the legislature contemplated that just such a situation might arise as did arise here; that after the work was completed, the final assessments might be reduced and cause a deficit, which could not be fairly provided for except out of the public treasury; and it conferred on the board the power to order the payment of the deficit from public funds, "which may have been appropriated to its use by the common council," and then enjoined on the council the duty to "make all necessary appropriations to enable said board to make all payments provided for in this section." These provisions of the statute, standing alone, evince the legislative intent to make such deficit payable out of the city treasury.

This conclusion does not render the proviso in the statute ineffective. Under some conditions it may affect the rights of the contractor. It is, under all conditions, binding on the members of the board, and a violation by them of its provisions, would subject them to the penalties imposed on officers for the violation of duties prescribed by the law.

Appellee maintains, that even if it should be held that the city could not be liable for a deficit of over $5,000, it would be liable in that amount, because, in any event,

5. the statute does not attempt to limit the authority of the board, except for the excess over that amount; that where the complaint shows the plaintiff entitled to any relief, it is sufficient to repel a demurrer.

We think this position is correct on this branch of the case, for even if it should be conceded that the contractor

is bound by the limitation of the proviso, it could not be successfully maintained that where the discrepancy might ultimately be found to exceed $5,000, he thereby lost the right to recover the latter amount.

The remaining ground of contention is the remedy pursued here by appellee, the appellant asserting that its remedy, if any, is by mandamus.

6.   In support of this proposition appellant cites the following provision from §8692 Burns 1908, Acts 1905 p. 219, §90: ''The common council and mayor may be compelled by mandamus proceedings to levy, collect and appropriate the necessary sum for the payment of any judgment.''

Here there had been no judgment rendered. The action is for breach of contract. The plaintiff has fully performed all things required of it, by the terms of the contract. The amount of the difference between the contract price, and the total amount of assessments, as finally corrected, must be paid out of the city treasury. A demand for this was made and refused. The plaintiff was entitled to a judgment for this amount. If the judgment obtained shall not be paid, mandamus will then be the appropriate remedy under §8692, *supra,* but nothing alleged in this complaint would warrant resorting to that remedy. *Board, etc.,* v. *Branaman* (1907), 169 Ind. 80; *King* v. *Board, etc.* (1904), 34 Ind. App. 231; 26 Cyc. 168.

There is no error in the record. Judgment affirmed.