STATE OF INDIANA, EX REL. NEAL *v.* BEAL, JUDGE.

[No. 22,857.   Filed June 30, 1916.]

1.   COURTS.—*Original Jurisdiction of Supreme Court.—Mandamus.—Statute.*—In construing the act of 1915 (Acts 1915 p. 207), providing that writs of mandate may issue out of the Supreme and Appellate Courts in aid of their appellate powers and functions, and providing further that "such writs of mandate" may issue out of such courts to circuit, superior or criminal courts to compel such inferior tribunals to perform any duty enjoined by law, the word "such", as used in the second proviso, does not so modify the words "writ of mandate" immediately following as to limit the meaning of the words "writs of mandate" in the second proviso to the writs of mandate previously provided in aid of the appellate powers and functions of the Supreme and Appellate Courts. p. 196.

2.   STATUTES.—*Construction.*—A statute should be so construed as to give effect to all parts thereof if such a construction can be reasonably and properly given.   p. 197.

3.   STATUTES.—*Construction.—Particular and General Words.—Ejusdem Generis.*—In construing the act of 1915 (Acts 1915 p. 207), providing that the Supreme and Appellate Courts may issue writs of mandate in aid of their appellate powers and functions and providing further that such writs of mandate may issue out of such courts to circuit, superior or criminal courts, compelling the performance of any duty enjoined by law upon such inferior tribunals, "including the granting of changes of venue," the words "including the granting of changes of venue" do not, under the doctrine of *ejusdem generis*, limit the power of the Supreme Court

State, ex rel. *v.* Beal—185 Ind. 192.

to issuing writs of mandate only to compel changes of venue, since such doctrine does not apply when a general class is followed by a clause including a particular class, and where the general words must bear a different meaning or be of no meaning whatever.    p. 197.

4.   STATUTES.—*Construction.*—*Change in Wording.*—A change of legislative purpose will be presumed from a material change in the wording of a statute.    p. 197.

5.   STATUTES.—*Title.*—The title of the act of 1915 (Acts 1915 p. 207), concerning the issuance of writs of mandate and prohibition by the Supreme and Appellate Courts, is sufficient to authorize the provisions thereof, all of which prescribe modes of procedure.    p. 198.

6.   MUNICIPAL CORPORATIONS.—*Street Improvements.*—*Assessments.* —*Appeal.*—*Question for Determination.*—On an appeal to the circuit or superior court, under §8716 Burns 1914, Acts 1909 p. 412, 423, from the assessments made in the final assessment roll for the improvement of a street or alley, the only question before the court for determination is whether the assessments of the various property owners should be reduced.    p. 202.

7.   MANDAMUS.—*Street Improvement.*—*Reduction of Assessment on Appeal.*—*Duty of Judge.*—*Statute.*—The provision of §8716 Burns 1914, Acts 1909 p. 412, 423, that whenever an assessment for a street improvement is reduced on appeal to the circuit or superior courts from the board of public works' assessment of benefits that a judgment shall be rendered in favor of the lien holder and against the city for the amount of the reduction and interest, enjoins upon the judge hearing the appeal a purely ministerial duty which is compellable by mandate.    pp. 202, 203.

8.   COURTS.—*Judge.*—*Ministerial Duty.*—A duty may be ministerial even though the person charged therewith must first find the existence of a state of facts warranting the performance of such duty.    p. 203.

9.   MANDAMUS.—*Adequate Remedy at Law.*—Mandamus could issue at the instance of the relator, a street improvement contractor, to compel a judge of a superior court to render a judgment in his favor and against the city for the amount of the reduction of street improvement assessments allowed in a property owner's appeal, as provided in §8716 Burns 1914, Acts 1909 p. 412, 423, even though the relator had, as a preliminary to filing the petition for mandamus, attempted to intervene, thereby making the demand on the judge necessary to establish the right to bring action for mandamus, since an appeal from the ruling denying relator's right to intervene would provide no adequate remedy at law.    p. 204.

10.   MUNICIPAL CORPORATIONS.—*Street Improvement.*—*Reduction of Assessments.*—*Entering Judgment for Contractors.*—*Effect.*—*Statute.* —Compelling a judge of a superior court by mandmus to enter a judgment in favor of a street improvement contractor, as the

lienholder, and against the city for the amount of the reduction of street improvement assessments allowed in a property owner's appeal to the superior court, as provided in §8716 Burns 1914, Acts 1909 p. 412, 423, is not such an adjudication of rights between the city and the contractor as would preclude the city from any defense it might have against the contractor, nor could the judgment rendered in the appeal affect the lien of the contractor or the rights of the property owners against him, since, under the statute (§8716 Burns 1914) the contractor could not be a party to such appeal.    p. 204.

Original action in the Supreme Court by the State of Indiana, on the relation of James A. Neal and others, against Fred W. Beal, as judge of the Superior Court of Vigo county, for a writ of mandate. *Mandate granted.*

*Davis, Bogart & Royse, Duvall & Whitaker* and *H. J. Curtis,* for relators.

*Beasley, Douthitt, Crawford & Bailey, George W. Wells* and *Thomas Gallagher,* for defendant.

LAIRY, J.—This is an original action commenced in this court by the relators herein, praying for a writ of mandate compelling the defendant, judge of the superior court of Vigo county, to render judgment in favor of relators, and against the city of Terre Haute for the amount of certain alleged street assessment liens.    The facts presented by the petition are briefly as follows:    The board of public works of the city of Terre Haute instituted proceedings for the improvement of a public street in the city and, under such proceedings, the contract for the building of the improvement was let to the relators as the lowest bidders, and the street was constructed under the contract and accepted by the board of works as completed.    The board then adopted a preliminary assessment roll, and gave notice of a hearing thereon, and at such hearing various property owners, assessed on the preliminary assessment roll, came before the board and objected

to the assessments made against them.   The board
confirmed the assessments and the property owners
appearing and objecting appealed to the superior
court of Vigo county.   In the superior court various
issues were formed between the city and the ap-
pealing property owners, and the appeals were con-
solidated in one case.   After a hearing the court
entered a judgment to the effect that the improve-
ment had not been built according to specifications;
that the property of none of the appealing property
owners had been benefited in any amount, and that
the assessments made against them be reduced to
nothing, vacated and set aside, together with the
liens therefor, and that the city pay all costs.
After the rendition of such judgment, the contrac-
tors, the relators herein, petitioned the court asking
leave to intervene in said proceedings for the pur-
pose of asking the court to modify the judgment,
and prayed to modify the judgment so that the
respective amounts in which the various assessments
were reduced would be placed against the city and
in favor of the relators, the alleged lienholders.
The court refused to permit the relators to intervene
and refused to modify the judgment as prayed.
The relators thereupon filed their petition in this
court for a writ of mandate and defendant demurred
thereto, raising the question as to relator's right
to the relief prayed for under the facts set out in
the petition.

In the memorandum accompanying the demurrer,
defendant first takes the position that under our
statute a writ of mandate cannot be issued by the
Supreme Court to a circuit or superior court of
this state to secure the relief here prayed for.
This primarily presents the proper construction
of an act of the General Assembly approved
March 4, 1915, Acts 1915 p. 207.   The part of

the act here in question reads: "Provided also, that writs of mandate and prohibition may issue out of the Supreme and Appellate Courts of this state in aid of the appellate powers and functions of said courts respectively; and Provided further, That such writs of mandate may issue out of the Supreme Court to the circuit, superior or criminal courts of this state respectively, compelling the performance of any duty enjoined by law upon such circuit, superior and criminal courts respectively, including the granting of changes of venue from the county in cases where such change of venue is allowed by law, and timely, proper and sufficient motion and affidavit have been filed therefor and such change of venue has been refused."

The defendant's first contention is that the words, "such writs of mandate," as used in the second proviso of this act as above set out, should be construed

1. to mean "writs of mandate" issued "in aid of the appellate powers of the court." The basis of the claim is that the word "such" as used in the second proviso, as above set out, so modifies the words "writs of mandate" following as to limit the meaning of the words "writs of mandate" in the second proviso to the writs of mandate provided for in the first. The construction suggested is improper and its adoption would strike out much of the second proviso as meaningless and make the statute unreasonable and contradictory. The use of the words "and provided further," at the beginning of the second proviso, show that it was the intention of the legislature that the second proviso should provide for something beyond and different from that stated in the first. As the first proviso has already given to the Supreme Court unlimited power to issue writs of mandate in aid of its appellate jurisdiction, it would be incongruous

to construe the second proviso as conferring upon the same court power to issue writs of mandate for the same purpose. A statute should be

2. so construed as to give effect to all parts thereof, if such a construction can be reasonably and properly given. *State v. Weller* (1908), 171 Ind. 53, 85 N. E. 761.

It is also asserted that the words "including the granting of changes of venue from the county," etc., limit the power of the Supreme Court in is-

3. suing writs of mandate to writs only for the purpose of compelling changes of venue, but this is not based upon reason or upon any proper rule of grammatical or legal construction. The argument is placed upon the doctrine of *ejusdem generis*, but this doctrine does not apply when a general class is followed by a clause "including" a particular class, and where the general words must bear a different meaning from the particular words or be of no meaning whatever. *U. S. Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 88 N. E. 69; *Strange* v. *Board* (1909), 173 Ind. 640, 91 N. E. 242.

Moreover, there was a material change in the wording of the statute made by the act of 1915, *supra*, in question, over the prior statutes of

4. 1881 (§1167 *et seq.* R. S. 1881), and the amendment thereto of 1911 on the same subject (Acts 1911 p. 541, §1224 Burns 1914), and a change of legislative purpose will be presumed from such a change of wording. *Hasely* v. *Ensley* (1907), 40 Ind. App. 598, 82 N. E. 809. The act under consideration conferred upon the Supreme Court jurisdiction to issue original writs of mandate for the purpose of supervising and controlling the actions and jurisdiction of the circuit, superior and criminal courts of the state.

Two other objections are interposed to the statute under which these proceedings were brought:    First, that the legislature of Indiana had no power to confer upon the Supreme Court original jurisdiction to issue writs of mandamus to control the judicial discretion of another court; and second, that the title of the act is not sufficient to authorize the provision thereof, conferring jurisdiction on the Supreme Court to issue original writs of mandate. The first objection is based upon the assumption that the statute confers upon the Supreme Court power to control the judicial action of another court. As to whether or not this construction of the statute can be warranted need not now be discussed, for, as will hereinafter be shown, the act sought to be mandated in this case is not one involving judicial discretion.    Without taking up further space, it is also sufficient to say that the title of the act is sufficient to authorize the provisions thereof, all of which prescribe modes of procedure.

The next question presented by defendant's demurrer is whether the petition states facts sufficient to authorize the issue of a writ of mandate.    The petition seeks to compel the judge of the superior court to comply with a certain provision of §8716 Burns 1914, Acts 1909 p. 412, 423, which reads as follows:    "Whenever any assessment is reduced on such appeal the court shall render judgment in favor of said lien holder and against said city for the amount of said reduction, with interests thereon."    It is defendant's position, as pointed out in the memorandum, that the act sought to be compelled is purely discretionary, and therefore cannot be mandated, while it is relator's contention, in support of their petition, that under the statute such act is a ministerial duty enjoined by law upon the judge of the Vigo Superior Court, and that there-

fore a proper case is presented calling for the exercise of the mandatory power of the court.

In passing upon the nature of the duty required by the portion of the act quoted, it is necessary to detail briefly other parts of the statute in order to show the general plan of procedure in relation to street improvements as bearing on the question here involved, and to refer to certain acts dealing with this subject which were superseded by the statute under consideration. Section 8710 Burns 1914, *supra*, provides for the preliminary steps to be taken by the board of public works in proceedings for the improvement of a street. It provides for a notice and hearing upon the question of whether the estimated cost of the improvement will exceed the aggregate benefits which will accrue to the property liable to assessment for such improvement. If the aggregate amount of benefits determined by the board is less than the estimated cost price, and the contract is subsequently executed, the remainder of the cost of such improvement shall be payable by the city in cash. It is provided that the determination of said board as to the aggregate amount of special benefits shall be final and conclusive except as thereinafter provided. The section then provides for a remonstrance to be filed within ten days by a majority of the resident freeholders on the street, and also for an appeal. At the conclusion of the ten days stated, the board shall either confirm or modify the preliminary order and proceed to let the contract, the validity of which is not to be questioned except by a suit to enjoin its performance, brought within ten days after its execution or before an actual commencement of the work. The section further provides that, within five days after the final order, forty per cent. of such property owners may file written objections with the board,

which afterwards will be filed with the clerk of the circuit or superior court of the county, to the effect that the improvement is not required by the public needs; that its cost will be excessive in view of the value and nature of the property to be assessed; that the cost will exceed the benefits, or that the board has no legal authority to order the same. A hearing of these issues is provided for, and the determination and order of the court shall be final upon all parties thereto and such as might have appeared at the hearing.

Section 8716 Burns 1914, *supra*, provides the manner in which the board shall make out the preliminary assessment roll, after an improvement has been completed, and for notice and hearing by such board of remonstrances filed by the owners affected, against the amount assessed against their respective properties. After the hearing the board shall either sustain or modify the preliminary assessment, and if the assessments are reduced so that the aggregate amount thereof shall be less than the contract price of the improvement, the difference shall be paid by the city in cash out of its general fund. It is then provided that this decision of the board shall be conclusive unless appealed from to the circuit or superior court of the county by an owner of a lot or parcel of land assessed. No transcript shall be necessary on such appeal, but it shall be sufficient to state in the petition the nature of the proceedings, a description of the property and the amount assessed against it. The cause is then to be tried by the court or judge in vacation. The costs of such appeal are to be taxed according to whether or not the assessments on such hearing are reduced a certain per cent. The statute then provides, as has been quoted at the beginning of this discussion, that when an assessment is reduced

on such appeal, the court shall render judgment for the amount of such reduction against the city and in favor of the lienholder.

The sections above referred to are sections 107 and 111 of an act of 1905 (Acts 1905 pp. 219, 286, §8710 Burns *et seq.* 1908), as amended by the laws of 1909. Acts 1909 p. 412, *supra.* The act of 1889 in reference to street improvements did not provide for an appeal or review. The act of 1901 (Acts 1901 p. 534) allowed an appeal from assessments on street improvements to the circuit court of the county, and provided that on such appeal the aggrieved property owner might present three questions to the court for determination: (1) That the proceedings for the improvement were invalid; (2) that the benefits assessed against the property were too high or the damages too low; or (3) that such assessment was too high in proportion to other assessments. The section of the act of 1905 (Acts 1905 pp. 219, 292, §8716 Burns 1908), dealing with this subject, provided for a review of assessments only and for the appointment of three disinterested appraisers by the circuit court of the county who were to reassess the benefits complained of.

It will be observed that the first act which provided for appeals from assessments expressly designated what questions might be tried and determined on appeal, and that the later act of 1905, *supra*, provided that the owner of any property assessed for the construction of such street may, within ten days from the completion of the assessment roll, file a written verified petition in the circuit or superior court of the county in which such city is situated, showing that the amount assessed against such lot or parcel of land is excessive and that it is not benefited by such improvement to the amount of the assessment. Upon the

filing of this petition the court was required to appoint appraisers to determine the amount of special benefits accruing to the lots and parcels of land described in the petition. The determination of such appraisers was final, and, in case the amount of benefits assessed against any parcel of land was reduced, the board of public works was given power to order the payment of the amount of such reduction out of any fund appropriated for its use by the common council. Under the provisions of this section as amended in 1909, the special benefits accruing to lots and parcels of land described in the petition are to be determined by the court, or the judge thereof in vacation, instead of by appraisers as before the amendment. In view of the former laws providing for appeals, and the general plan of procedure as set out by the sections of the statute under which these proceedings were carried on, it is apparent that the only question rightfully submitted to the trial court upon the appeal thereto was whether the assessments made against the various property owners should be reduced.

6.

The statute provides that no transcript shall be necessary and that it shall be sufficient to state in the petition the nature of the proceedings, the description of the property, and the amount of the assessment made against it. It requires that notice of the appeal be given to the city, but no notice is required to be given to the contractor nor to any other person affected. It is quite apparent that no question can be determined on such an appeal other than the special benefits to the property described in the petition, and that the city is made a party because it alone can be affected by the determination of the question involved. The defendant, judge of the superior

7.

court, had no power or jurisdiction to pass upon the validity and legality of the proceedings on the appeal in this case, the statute giving jurisdiction only to decide whether or not the various assessments as made by the board were excessive.    Upon finding that the assessments in question should be reduced, the duty was enjoined by law upon the judge before whom the appeal was tried to render judgment against the city for the amount of such reduction.    The provision is clearly mandatory and, taken in connection with the provision that the board shall fix the aggregate amount of special benefits and that the city shall pay the amount of the difference between the amount of the special benefits and the contract price, shows that the intention is that the fund for the payment of the contract price shall not be depleted by reducing the assessments.    *City of Indianapolis* v. *American, etc., Co.* (1911), 176 Ind. 510, 96 N. E. 608.    A duty is none the less ministerial because the person who is required to perform it may have to satisfy himself as to the existence of a state of facts under which he is given his right or warrant to perform the required duty.    *Public Service Commission* v. *State* (1916), 184 Ind. 273, 111 N. E. 10.    From what has already been said, it is clear that the act of placing the amount in which the assessments had been reduced as a charge against the city was clearly mandatory under the terms of the statute.    It is such a ministerial act as can be enforced by mandate. *People* v. *Graham* (1891), 16 Colo. 347, 26 Pac. 936; *Claudius* v. *Melvin* (1905), 146 Cal. 257, 79 Pac. 897; *Havens* v. *Stewart* (1900), 7 Idaho 298, 62 Pac. 682; *State, ex rel.* v. *Engle* (1891), 127 Ind. 457, 26 N. E. 1077, 22 Am. St. 655.

The defendant further contends that a mandamus

can not issue in this case for the additional reason that relator had an adequate remedy at law.

9. The remedy which is suggested is that of an appeal from the judgment of the court denying the relators' petition to intervene. Relators, as a preliminary to filing their petition for mandamus, were required to make a demand on defendant for the action sought to be compelled. The relators had no right to intervene in a proceeding against the city by property owners from assessments, in which proceeding, as has been pointed out, the only valid issue was as to how much of the cost of that improvement should be paid by the property owners and how much by the city. The request was made for the purpose of establishing relators' right to bring the action for mandamus, and there was nothing from which to appeal.

It is finally suggested that compelling the defendant to enter a judgment against the city as prayed for in the petition would be an

10. adjudication of certain issues between the city and the relators herein, and would preclude the city from any defense it might have against such contractors. As the contractors could not be parties to the appeal under the statute, it is apparent that no judgment could be rendered therein which would deprive them of their lien or otherwise affect their rights. It is equally clear that no judgment rendered therein could in any way affect the rights of the property owners or the city as against the contractors. The judgment, which the statute prescribes shall be rendered on the reduction of assessments in such a proceeding, is not such a judgment as would have the effect suggested. The relators are in no way parties to the proceedings on appeal from the assessments made by the board of works, and any claim or defense which

State, ex rel. *v.* Beal—185 Ind. 192.

may have existed between the city and such con-
tractors could be in no way adjudicated by the action
of the trial judge in rendering the so-called judgment
against the city and in favor of the lien holders.
A judgment, in the sense that it is used in this statute,
means the transfer of the amount by which the
assessment is reduced from the appealing property
owner to the city.

The complaint states facts sufficient to constitute
a cause of action. Four paragraphs of answer
were filed, and a demurrer addressed to the second,
third and fourth paragraphs of such answer was
sustained by the court leaving the case at issue on
the complaint and the first paragraph of answer,
which is a general denial.

The evidence on the trial of this issue supports
the material allegations of the complaint and the
court finds that relators are entitled to a writ of
mandamus directing the defendant, as judge of the
superior court of Vigo county, to enter an order in
the consolidated case of *Agnes Ring* v. *City of
Terre Haute*, directing the city of Terre Haute to
pay the amount by which the assessment against
the several lots and parcels of land affected by the
judgment in the case were reduced, as other street
improvements are paid by said city. It is directed
that judgment be entered in accordance with this
opinion, and that the costs be taxed against relators.

NOTE.—Reported in 113 N. E. 225. Doctrine of *ejusdem generis*
in the construction of statutes, when inapplicable, Ann. Cas.
1914C 305; 36 Cyc 1121. Right of private person to mandamus to
enforce performance of a duty by a court or magistrate, 9 Ann. Cas.
1074; Ann. Cas. 1912A 1118; 26 Cyc 192, 210. See under (4) 36
Cyc 1165.