### No. 14,902.

### Hovey, Governor, *v.* The State, ex rel. Riley.

CONSTITUTIONAL LAW.—*Practical Exposition.*—Practical exposition given to constitutional provisions which are not entirely clear and free from doubt, is of controlling force.

SAME.—*Practical Exposition Merely Establishes a General Principle.*—Practical exposition does not give rights in particular cases; it merely establishes a general principle.

SAME.—*State Benevolent Institutions.—Legislature may Appoint Officers of.—*

Under the Constitution, and the effect which has been given it by practical exposition, the Legislature may appoint the governing officers of all the benevolent institutions of the State, or, at its option, authorize their appointment by some other department of the government.

SAME.—*Particular Qualifications of Officers.—Legislature may Prescribe.*—The offices relating to the State's benevolent institutions are not such as every elector may claim a right to hold, solely on the ground that he is a voter, but the Legislature may restrict them to competent persons by prescribing particular qualifications.

SAME.—*State's Property.—Control of.*—The Legislature has general authority over the property of the State, and it may appoint agents or officers to manage such property; the benevolent institutions are the property of the State, and are within the control of the Legislature.

BERKSHIRE, J., and COFFEY, J., dissent.

From the Marion Circuit Court.

*L. T. Michener,* Attorney General, *J. H. Gillett* and *A. C. Harris,* for appellant.

*J. E. McCullough* and *L. P. Harlan,* for appellee.

ELLIOTT, C. J.—The central question which this record presents is this: Is the relator, by virtue of his appointment by the General Assembly of the State, entitled to the office of trustee of the institution for the education of the blind? In our judgment he is.

That there is a class of officers that may be appointed by the General Assembly can not now be justly denied, and the only question which is still open to debate is, what officers belong to this class? It is our judgment that, in view of the provisions of the Constitution and the effect given them by practical exposition, the governing officers of all of the benevolent institutions of the State may rightfully be appointed by the General Assembly.

The Constitution contains provisions which, if they do not do more, do at least supply color for the claim of the right of the General Assembly to appoint the governing officers of the benevolent institutions of the State. It is neither necessary nor proper for us to decide as to the general extent of the legislative power to appoint to office, except in so far

as it is incidentally involved in the disputed right to the offices of the class claimed by the relator. We are not here confronted with any question as to the right to a local office, or to a general administrative office, for here we have a controversy involving offices of a peculiar nature, the duties of which relate exclusively to institutions that it is made the duty of the Legislature to establish and maintain.

As there is some warrant in the Constitution for the claim of the legislative right to appoint the governing officers of the benevolent institutions, it is our duty to ascertain what practical exposition has been given to the Constitution, and if we find a principle established by long continued practice, we must yield to it, unless we are satisfied that it is repugnant to the plain words of the Constitution. We are far from asserting that the plain provisions of the Constitution may be broken down or overleaped by practical exposition, but what we do assert is, that where, as here, there are provisions not entirely clear and free from doubt, practical exposition is of controlling force.

Our own and other courts have time and time again adjudged that practical exposition is of controlling influence wherever there is need of interpretation. The language employed by the courts is strong, and the current of opinion is unbroken. In speaking of the effect of a practical exposition, it was said by an able court that : " It has always been regarded by the courts as equivalent to a positive law." *Bruce* v. *Schuyler*, 4 Gilm. 221. In adhering to long continued exposition, another court said : "We can not shake a principle which in practice has so long and so extensively prevailed." *Rogers* v. *Gooden*, 2 Mass. 478. But it is unnecessary to quote the expressions of the courts, for harmony reigns throughout the whole scope of judicial opinion upon this subject. *Board, etc.*, v. *Bunting*, 111 Ind. 143 ; *Weaver* v. *Templin*, 113 Ind. 298, 301 ; *Stuart* v. *Laird*, 1 Cranch, 299 ; *Martin* v. *Hunter*, 1 Wheat. 304 ; *Cohens* v. *Virginia*, 6 Wheat. 264 ; *Ogden* v. *Saunders*, 12 Wheat. 213, 290 ;

*Minor* v. *Happersett*, 21 Wall. 162; *State* v. *Parkinson*, 5 Nev. 15; *Pike* v. *Megoun*, 44 Mo. 491; *People* v. *Board, etc.*, 100 Ill. 495; *State* v. *French*, 2 Pinney (Wis.), 181.

Practical exposition establishes a principle. Particular instances fall within general rules, and practical exposition establishes general rules for the government of particular instances. Practical exposition does not give rights in particular cases, since to give it that effect would create an evil as great as that of class legislation, and against that evil is directed some of the strongest provisions of our Constitution. Courts must search for the general principle which practical exposition establishes, and, when that principle is discovered, apply it to all cases within its legitimate sweep. The science of jurisprudence is not made up of particular instances, nor can it be so constructed, for, if it be a science at all, it must be composed of principles. To us it is clear that what we have here to do is to find what principle has been established, and under that principle bring the particular instance.

The principle which the long continued practice has established is, that the General Assembly has the power to appoint the governing officers of all of the benevolent institutions, or, at its option, authorize their appointment by some other department of the State government. This is the effect of the practice, and it is narrowing the effect of this practical exposition much beyond what reason and authority justify, to hold that it applies to some of the institutions and not to the others. We can not believe that the General Assembly may rightfully appoint the trustees of the hospital for the insane, and yet have no authority to appoint those of the institution for the education of the blind. That the General Assembly has power to appoint trustees of the latter institution has been expressly decided, and practical exposition has also asserted the same thing. The practice establishes a principle, if it establishes anything, that principle applies to a class of officers, and within that class are the officers of all

of the benevolent institutions of the State. It is impossible to conceive why the General Assembly may not appoint the officers of all the benevolent institutions if it may, as it is settled it may do, appoint the officers of one. The principle is the same in the one instance that it is in the other, and the class embraces all of the officers of the different institutions.

The decisions of this court either expressly decide or tacitly concede that some appointing power is vested in the General Assembly. *Collins* v. *State, ex rel.,* 8 Ind. 344 ; *State, ex rel.,* v. *Harrison,* 113 Ind. 434 ; *State, ex rel.,* v. *Denny,* 118 Ind. 382; *Hovey* v. *State, ex rel. Carson, post,* p. *395.* The practice which we assume constitutes a practical exposition, is, therefore, one recognized by all the departments of the government, and is of unusual strength. It is so strong that we can not do otherwise than yield to it, so that, without deciding what effect the provisions of the Constitution should have independently of practical exposition, we must decide that, under the operation of this practical exposition, they must be deemed to authorize the appointment of the governing officers of the benevolent institutions, since this practical exposition establishes a general principle which must govern all cases that legitimately fall within its operation.

The power to appoint, or to direct the appointment of, officers embraced in the class to which the one here in controversy belongs, has been exercised by the General Assembly ever since the adoption of our present Constitution. At the time that Constitution was adopted this was the practice, and of this practice the framers of that instrument had knowledge. Instead of embodying in the present Constitution provisions against the practice, those who framed it placed in it provisions giving the practice substantial recognition, and we can not, at this late day, assert that the practice persisted in for so many years was in violation of constitutional provisions. They did not, at all events, materially change the former Constitution in this particular, although they did essentially change it as to other classes of officers. The

claim of legislative power has not been made, it is important to keep in mind, in a few scattered instances, or in a broken and disjointed course, but it has been made and enforced in many instances, and with uninterrupted uniformity.

We have suggested that the office is a peculiar one, and we may add that it is one which it is evident the Constitution did not intend should be filled by the electors of the State at a general election. It is, as it seems to us, an office which may properly be regarded as within the control of the General Assembly, the control belonging to that body as an incident of the right to establish and maintain benevolent institutions. *Hovey* v. *State, ex rel. Carson, supra.* But we need not decide what would be the effect of the constitutional provisions had there been no long continued usage, for there was such usage and it gave the effect to the provisions that we here assign them. The general delegation of power to the General Assembly may have been with much reason considered as carrying with it, as an incidental power, the right to appoint officers to manage and conduct the State institutions. Such certainly is the force the usage has affixed to those provisions. Offices of the class under immediate mention are not such as every elector may justly claim a right to hold solely on the ground that he is a voter and all voters are entitled to hold offices, but they are offices which the Legislature may restrict to competent persons by prescribing what shall be the qualifications of those who enter them. It is within the authority of the Legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience. It may, indeed, provide for the appointment of women to this class of offices, as has been done in some instances. If we are wrong in affirming that, in this class of offices, the Legislature may prescribe particular qualifications, then the practice of all the departments has been in many instances a persistent violation of the Constitution.

Another consideration, not without importance and one that is to be regarded in construing the Constitution and giving effect to its provisions, is, that the benevolent institutions are the property of the State, and as such within the general control of the Legislature. As the Legislature has general authority over the property of the State, and as it may appoint agents or officers to manage that property, there is a solid foundation for the practice which has so expounded the Constitution, or aided in expounding it, as to give the General Assembly the power to appoint the governing officers of the benevolent and other State institutions. The basis of the practice is the familiar principle that the grant of a principal power carries with it all necessary subsidiary powers.

Judgment affirmed.

BERKSHIRE, J., dissents for the reasons stated in *City of Evansville* v. *State, ex rel.*, 118 Ind. 426. COFFEY, J., also dissents.

Filed May 18, 1889; petition for a rehearing overruled June 20, 1889.