# CHARLESTON.

CUNNINGHAM *et al.* v. COKELY *et al.*

Submitted October 17, 1916.    Decided October 24, 1916.

1.  ELECTIONS—*Primary Elections—Legislative Control.*
    Primary elections are so far matters of public concern that, within legislative discretion, when·not restrained by any constitutional inhibition, they are proper subjects of reasonable statutory regulations under the police power of the state. Such regulations are vital to the accomplishment of the purpose and scheme of nominating elections. (p. 63).

2.  SAME.
    Statutes providing for such elections are based on a recognition of political parties as governmental agencies, and are usually intended to maintain party organizations and secure the integrity of party nominations. (p. 63).

3.  SAME—*Primary Elections—''Political Party.''*
    No political party organization not comprehended within the definition found in section 1 of the primary election law, when properly interpreted, can participate in such elections. (p. 64).

4.  SAME—*Nominations—Nominations by Certificate.*
    A political organization so excluded can not nominate presidential electors, except by certificates signed by electors numerically equal to five per cent of all the votes cast therefor in the next preceding general election held in the state. (p. 64).

5. SAME—*Primary Elections—Political Party.*

The provisions of the primary law (§§1, 23, 29; Barnes' Code, §26a, ch. 3), defining political parties on the basis of a fixed percentage of the vote cast at the last general election held in the state, requiring them to select their candidates by primary election and convention, and authorizing nominations by lesser groups of voters· to be made solely by petition, do not constitute an infringement of any inhibition prescribed by the constitution of this state. (p. 66).

6. SAME—*Statutes—Repeal—Implication.*

When two statutes passed at different dates cover and fully provide for the same general subject, the subsequent one, not purporting to amend the earlier act but manifestly intended to be a substitute therefor, is to be deemed and treated as the last legislative expression on that subject, and as operative to repeal the former statute by necessary implication. (p. 64).

Original petition by J. E. Cunningham and others for writ of mandamus to L. L. Cokely, Clerk of the Circuit Court of Ritchie County and others.

*Writ refused.*

SQUIRE HALSTEAD and J. HOWARD HOLT, ·for petitioners, furnish the following authorities:

1. Ch. 26, Acts 1915, does not apply to presidential electors.

Acts of 1915, Ch. 26, §1.

*State* v. *Brodijan* (Nev.) 125 Pac. 699.

2. Every intelligent and virtuous citizen not a pauper has an inalienable right to participate in the government under which he lives;. this fundamental right is recognized by the Constitution of West Virginia in Art. II, §§3, 4, and Art. IV, §1.

*Britton* v. *Board of Election Commissioners,* 129 Cal. 337; 61 Pac. 1115; Mechem in 3 Mich. Law Rev.

*State* v. *Staten,* 6 Cold. (46 Tenn.) 233.

3. The Constitution provides but one way for the exercise of this right, and that by the ballot.

Const. W. Va., Art IV, §1.

4. The Constitutional right to vote includes (1) a right to freely select candidates, (2) to vote for principles as well as

men, and (3) to maintain party organization. Any act denying any of these corollary rights is unconstitutional.

> *Britton* v. *Board of Election Commissioners, supra.*
> Mechem in 3 Mich. Law Rev.
> *Morrow* v. *Wipf,* (S. D.) 115 N. W. 1121.

5. The act in question if applied to minor political parties is unconstitutional because it denies them and their adherents any participation in the primary and denies them a right to nominate by petition until after the primary and denies the right of one participating in the primary to sign a petition for a minority party candidates.

> Acts 1915, Ch. 26, §23.
> *Britton* v. *Board of Election Com., supra.*

6. Five per cent, is an unreasonable per cent, to require of a reform party before it can enter the field.

> Acts of 1915, Ch. 26, §1.
> *Britton* v. *Board of Election Com., supra.*

7. The act is unconstitutional because it compels the voter to swear to his political affiliations and practically binds him to support the candidate selected at the primaries,—thus destroying the freedom of electors.

> Acts 1915, Ch. 26, §13.

8. It can have no retroactive effect for it destroys rights and privileges vested in the electors of minor parties at the time of its passage.

> Art. III, §11, Const. of West Va.

9. This act impliedly excepts all political parties casting less than five per cent. of the total vote from its operation; for it says "for the purposes of this act."

> Acts of 1915, Ch. 26, §1.

*S. A. Powell* and *Adams & Cooper,* for respondents.

LYNCH, JUDGE:

The relators Cunningham and others, alleging themselves to be citizens and voters resident within the state and members of a political organization called and known as the Pro-

hibition party, pray a writ of mandamus to compel the ballot
commissioners of Ritchie county to place on the official ballot
for the general election in November, 1916, the names of the
presidential electors nominated by the party at a state con-
vention held for that purpose at Clarksburg June 7, 1916.
Its nomination of candidates for president and vice-president
of the United States was made by the national convention of
the party held at St. Paul in the ensuing July. The usual
certificates of nominations were tendered to the clerk of the
circuit court of Ritchie county, accompanied by a request to
receive and file them, with which it is alleged he refused to
comply.

In response to the alternative writ awarded according to
the prayer of the petition, the respondent Cokely, the clerk,
and the other ballot commissioners appointed by him, admit
the facts alleged, and deny the right of the relators to com-
pel them to place the names of such candidates on the official
ballot as so requested.

The pleadings present one question only for adjudication,
one purely legal. This question must be determined, indeed
it can only be determined, from an interpretation of the stat-
utes of this state governing the nomination of candidates for
public office. The advisability or propriety of the statutes are
questions proper only for legislative consideration, unless
they conflict with some constitutional provision. Except in
so far as the organic law of the state forbids, it is competent
for the legislature to enact laws regulating and controlling
nominations and elections of public officials. Both are matters
of public concern, and subjects of proper and reasonable leg-
islative regulation, restriction and control. The exercise of
that function is limited and restrained only by that instru-
ment. To deprive the legislature of its regulatory power and
authority, it must appear affirmatively and unmistakably that
it has exceeded the bounds so prescribed. It is not, however,
so much a question of what the constitution permits the legis-
lature to do as what the constitution prohibits it from doing.
Unless the inhibition urged essentially is imperative or in-
dubitably inferential, the courts are powerless to declare an
enactment violative of the organic law. The unconstitutional-

ity of a law must obviously appear. This requirement gener-
ally is recognized in all jurisdictions.

It is impliedly if not actually admitted that the primary
election law (ch. 26, Acts 1915; §26a, ch. 3, Barnes' Code) con-
tains no provision for the nomination, by election or conven-
tion, of the candidates of any organization not comprehended
within the definition of political parties found in the first
section of the act; that the Prohibition party is not within
that definition, because it is not a political "organization
which at the last preceding general election polled for its
candidates for representatives in congress in the several dis-
tricts at least five per cent of the entire vote cast for that of-
fice in the state". Relators neither aver nor prove that their
party did cast that number of votes. They make no such
pretension.

Nor, for the same reason, did or could the Prohibition party
assert any right to act under section 29 of the primary law,
authorizing each "political party", in the month of August
of each year in which a president of the United States is to
be elected, to "hold a meeting to formulate and promulgate
a state platform and select presidential electors for the state
at large and each congressional district". To invoke this
act, it is essential that an organization come within the defini-
tion of a political party found in section 1. Not having the
required percentage of the vote at the last general election,
the party represented by the relators could not claim the ben-
efit of the statute.

However, relators do insist on two propositions; one being
that, as the Prohibition party was an active political organi-
zation at and prior to the passage of the primary election law,
it can not lawfully be deprived of its right to representation
on the official ballot through its party nominations made in
what they claim to be a duly constituted convention, and duly
certified to the clerk of the circuit court of Ritchie county.
Reliance for that contention is placed solely on §18, ch. 3,
Code 1913. That statute did authorize the nomination of can-
didates for public office by an organized assemblage of voters
or delegates of any political party which at the general elec-
tion next preceding such convention polled at least three per

cent of the entire vote of the state, or any division thereof for which the nominations are made, "or have had nominations on the official ballot for the state or any division or subdivision thereof for the last preceding ten years". To show themselves qualified to invoke the provisions of the section in justification of the award of the final writ, the relators aver the continued existence of the Prohibition party as a national political organization and the regularity of its quadrennial nominations of presidential electors since and including the year 1872, and of its state organization and nominations since and including the year 1884, and that in the year 1912 it polled in this state "in the neighborhood of 5800 votes" for its candidate for governor, of which 160 were cast in Ritchie county. The first provision of the act, however, prescribes as the true test of the right to representation on the official ballot the required percentage of the votes cast in the general election held in 1914, as to which there is neither averment nor proof. But, in any event, the candidates of the Prohibition party received numerically less than three per cent of any combination of votes cast for any office filled by the general election held in this state in either year. So that, even if the section were still in force, its first clause does not enure to the advantage of any political organization whose adherents cast less than the required number of votes at the preceding general election. Nor is the latter clause of the section applicable. Manifestly, the entire section was repealed by the primary act. That statute contained a clause expressly repealing all prior legislation inconsistent therewith. Moreover, it covered the whole subject of nominations for public office. It required political parties, as defined therein, to designate their candidates by means of a primary election, except candidates for presidential electors and judges, and these section 29 requires to be named by the convention thereby prescribed. With reference to political organizations not comprehended within the definition of a political party, a mode of nomination by petition was provided. It is obvious that the primary act, dealing comprehensively and fully with the matter of official nominations, was not intended to be amendatory of older statutes on the same subject or supple-

mentary thereto, but as an elaborate and ample scheme for the selection of political nominees. So construed, it repeals by necessary implication §18, ch. 3, Code 1913, relating to con-. ventions. As stated in *Grant* v. *Railroad Co.*, 66 W. Va. 175, "a later statute, covering the whole subject matter of an earlier one, not purporting to amend it, and plainly showing it was intended to be a substitute for the earlier act, works a repeal of such earlier act by implication, even though the two are not repugnant in the usual sense of the term." See also *Hawkins* v. *Bare*, 63 W. Va. 431; *Vansant* v. *Commonwealth*, 108 Va. 135. The primary law of Minnesota defined a political party as one casting ten per cent of the total vote of the last election for its leading candidate, and provided that the nominations of such parties should be made in accordance with that act, reserving the right to lesser groups of voters to nominate their candidates by petition as authorized by a prior law still in force. The primary act was held to repeal by implication the general statute providing for conventions. Hence, ch. 26, acts 1915, must be regarded as prescribing the exclusive modes whereby political nominations may be made in this state.

Tersely stated, the second proposition advanced is that the primary statute, if held effectual as a repeal of §18, ch. 3, Code, is based upon an arbitrary and discriminatory classification of voters, operative to destroy minor political party organizations, and violative of various provisions of the state constitution. Is the act amenable to that criticism? That is the paramount and vital inquiry.

The relators rely for support of their contention against the legal validity of the act on three California decisions, which, upon the particular facts and laws involved therein, do in fact adopt that view. *Britton* v. *Commissioners*, 129 Cal. 337, citing the other two cases. Therein the law of that state of 1899 was held invalid as to that provision prohibiting the election of delegates to a convention of any political party not representing three per cent of the votes cast at the last election; but the principal reason assigned for the decision was that the act provided no other way by which minor parties might get on the ballot for the general election. No legal

method was rendered available to them whereby they might select candidates and thus secure representation at the polls. But in the later case of *Katz* v. *Fitzgerald,* 152 Cal. 433, after the California constitution had been changed so as in general terms to sanction nominating primaries, the same court held constitutional a law classifying voters and excluding from the primary parties casting less than three per cent of the last vote in the general election.   It was held there was ''no discrimination between large and small political parties,'' and that the percentage clause was a necessary and rational provision.   These restrictions, especially where other modes of making nominations are afforded the minor political groups, uniformly are deemed and interpreted as valid and essential to the efficiency of the primary system.   *State* v. *Hagendorf,* 20 N. D. 622; *Riter* v. *Douglass,* 32 Nev. 401; *State* v. *Drexel,* 74 Neb. 776; *State* v. *Michel,* 121 La. 378; *State* v. *Felton,* 77 Ohio 554.   The percentage of the vote fixed as the basis of party classification, by the statutes passed upon in these cases, ranged from one to ten per cent.   It may be well to summarize briefly other decisions.

In *State* v. *Michel,* 121 La. 378, and *Ladd* v. *Holmes,* 40 Ore. 167, in response to the contention of discrimination, it was said the primary laws construed, defining political parties on the percentage basis and excluding the smaller groups from participation in the primaries, could not possibly be classed as local or special laws within the constitutional inhibition against the grant of special privileges and immunities. The acts, it was said, were but reasonable regulations of the larger parties, designed to safeguard the privileges of the electors thereof, and not infringements of the rights of the minor parties or individual voters, to whom the right was reserved to nominate by petition, which was held a reasonable regulation and not violative of any constitutional right.   The same principles are enunciated in *Ledgerwood* v. *Pitts,* 122 Tenn. 570, and *State* v. *Black,* 54 N. J. L. 446.   It was so held in Maryland, where the primary law was limited in its benefits to the two parties casting the highest number of votes at the last general election.   *Kenneweg* v. *Alleghany County,* 102 Md. 119.

Nor does the classification assailed conflict with a constitutional guaranty of freedom in the exercise of the elective franchise. *State* v. *Drexel,* 74 Neb. 776; *State* v. *Felton,* 77 Ohio 554. A statute of Ohio provided that certified nominations of candidates for public office should be made by convention or primary election by political parties which at the next preceding election polled at least one per cent of the entire vote cast in the state. Apparently, no method was made available whereby lesser groups of voters might make and certify nominations. Yet, in *State* v. *Poston,* 58 Ohio 620, the law was held "not repugnant to any provision of the constitution. Such restrictions upon the right to have nominations printed on the blanket ballot is necessary to render it practicable. The right of a qualified elector to vote at all elections is not unreasonably impeded".

The election law of Pennsylvania provided that the nominations entitled to appear on the official ballots should be made either by the authorized nominating bodies of the political parties casting three per cent of the vote at the last election, or by papers signed by qualified electors to the number of one half of one per cent of the largest vote cast at the preceding election for any officer elected for the state at large if the nomination is for a state office, otherwise to the number of three per cent of the largest vote cast at the preceding election for any officer elected in that portion of the state for which the nomination is made. It was held, in *De Walt* v. *Bartley,* 146 Pa. 529, that the law was not "in violation of the constitutional provisions that elections shall be free and equal, and that all laws regulating elections shall be uniform throughout the state. While prescribing reasonable regulations, requisite to effect its object, it carefully preserves the right of each elector to vote for whom he pleases without any unnecessary inconvenience". The court further said: "At the last general election the highest vote polled in this state was 790,000, and the vote cast for the Prohibition candidate was 18,429, less than three per cent of the entire vote cast, and under the provisions of the act a candidate nominated by the Prohibition party would not be entitled to have its ticket printed at the public expense, as in the case of the other two

parties. It was contended that the provision or discrimination against the Prohibition party is in violation of that clause of the constitution which declares that elections shall be free and equal, and that all laws regulating the holding of elections by the citizens shall be uniform throughout the state; that these constitutional provisions were intended to secure to every citizen equality in the manner of voting, and to prohibit the legislature from passing any law which shall give, directly or indirectly, an advantage to some voters which will not equally apply to all voters. This contention is plausible but unsound. The act does not deny to any voter the exercise of the elective franchise because he happens to be a member of a party which at the last general election polled less than three per cent of the entire vote cast. The provision referred to is but a regulation, and we think a reasonable one, in regard to the printing of tickets. The use of official ballots renders it absolutely necessary to make some regulations in regard to nominations, in order to ascertain what names shall be printed on the ballot. The right to vote can only be exercised by the individual voter. The right to nominate, flowing necessarily from the right to vote, can only be exercised by a number of voters acting together. Three persons may claim to be a political party, just as the three tailors of Tooley street assumed to be 'the people of England'. It follows that if an official ballot is to be used nominations must be regulated in some way, otherwise the scheme would be impracticable, and the official ballot become the size of a blanket''.

Again, in *State* v. *Jenson,* 86 Minn. 19, the court held valid, on the ground of differences in party conditions, a statute excluding from primary elections parties casting less than ten per cent of the total vote at the last election for their leading candidates. In its opinion, the court said: ''While it seems to some of us that the percentage of the vote selected as the basis of the classification in this act is larger than necessary, yet it was a question for the legislature, and we are not justified in holding that the classification was arbitrary.''

The Supreme Court of Wisconsin held, in *State* v. *Phelps,* 144 Wis. 1, that, notwithstanding ''the right of suffrage in-

cludes the right to form political parties and the right of each party to have all the machinery not reasonably prohibited by law for making its organization effective as to the policy of its members by electing officers in harmony therewith'', principles for which the relators here contend, and notwithstanding ''constitutional inhibitions of legislative interference with the right to vote and rights incidental thereto, there is a legitimate field of legislative activity in the nature of regulation''. Moreover, while denouncing as an unreasonable interference ''a regulation which necessarily tends to afford one political party of substantial status a better opportunity for efficient existence than another however large, or materially to impair or prevent fair opportunity for any organization of voters of substantial numbers and standing to compete for favor'', nevertheless ''legislative regulations of the right to vote and rights incidental thereto are appropriate to keep the ballot sheet within a reasonably workable compass both from the standpoint of the party and individual right'', notwithstaning ''the express or implied consitutional inhibitions against class legislation, recognition of the existence and inviolability of inherent rights, and express guaranty of the right to vote.'' Therein was upheld as valid, because not an infringement of any constitutional guaranty, a requirement of a number equal to twenty per cent of the votes cast in the next preceding general election as a test of the competency of minor political organizations to have the use of the official Australian ballot system for their organic purposes. So accordant with reason and principle, as we believe, is the doctrine of the case cited, and so responsive to the contentions of the relators, that the liberal quotation therefrom seems justified. With the exception of California, no appellate court, so far as we can discover, has held unconstitutional percentage classifications of parties entitled to participate in primaries. Other jurisdictions uniformly sustain the validity thereof, noting generally the provision usually inserted for nominations of candidates by minor parties by conventions or by petitions containing signatures of the required number of electors voting in the preceding general election. Such a regulation renders competent nominations made as

therein permitted, upon compliance with its terms, and is held uniformily by the cases herein cited to be reasonable and valid and an appropriate limitation upon the right claimed by relators.

Consonant with this approved regulation, the state primary law does make ample provision for the nomination of candidates by minor parties "otherwise than by direct primary election" (§23). Compliance therewith is made to depend only on certificates signed by five per cent of all the voters participating in the last general election within "the political division for which the candidate is presented". There is no limitation exclusively confining signatures to the membership of any particular party organization. By implication, any voter willing to affix his signature may do so, it would seem, without regard to his own party predilection. This mode of securing representation on the official ballots clearly was available to the adherents of the Prohibition party. If, for any reason satisfactory to them, they declined, or through inadvertence failed, to exercise the privilege or opportunity so offered, they can not now reasonably be heard to assert the infringement of any right guaranteed to them by the constitution of this state.

The writ is refused.

*Writ refused.*