HARRELL ET AL. *v.* SULLIVAN, JUDGE, ET AL.

[No. 27,662. Filed March 16, 1942. Rehearing denied May 4, 1942.]

110

*George E. Hershman* and *Samuel F. Sirois,* both of Crown Point, and *Victor K. Roberts,* of Lowell, for appellants.

*Frank L. Greenwald,* of Gary, *Emmett M. LaRue,* of Rensselaer, *Aaron H. Huguenard,* of South Bend, and *Arthur H. Fruechtenicht* and *John H. Logan, Jr.,* both of Fort Wayne, for appellees.

*Edwin Steers* and *Edwin Steers, Jr.,* both of Indianapolis, amici curiae.

SHAKE, C. J.—The appellees are the duly elected or appointed, qualified and acting judges and clerks of the circuit courts, and the Democratic and Republican county chairmen of Lake, Allen, Madison, St. Joseph, Vigo, Vanderburgh, and Marion counties. The case involves the constitutionality of chapter 100, Acts of 1941. The Jasper Circuit Court held the act valid.

The amended complaint alleges that the appellants are residents, taxpayers, and voters of Marion, Lake, and Madison Counties; that they are entitled to the right and privilege of voting at all general elections held therein; that they are interested in seeing that all the voters of the State are legally and properly registered; and that the establishment and maintenance of the system of registration provided for in said act will greatly increase the taxes which the appellants will be required to pay. It is contended by the appellees that the complaint discloses that the appellants have no right to maintain this action. The

rule that to enforce private rights the plaintiff must show an injury to his person, property, or reputation is not applicable to an action for the preservation of public or political rights. The appellants have sufficiently alleged their capacity to sue. *Hamilton, Auditor* v. *The State* (1852), 3 Ind. 452; *Brooks* v. *State, ex rel.* (1904), 162 Ind. 568, 70 N. E. 980; *Zoercher* v. *Agler* (1930), 202 Ind. 214, 172 N. E. 186, 907.

Chapter 100 provides that in each county having a population of 80,000 or more there shall be a board of registration composed of a member from each of the two political parties which cast the highest and next highest number of votes for Secretary of State in such county at the last preceding general election, who shall be appointed or removed by the judge of the circuit court upon the written recommendation of the respective county chairmen of such political parties. In counties with a population of less than 80,000 the clerk of the circuit court is made, ex officio, the sole registration officer. Such registration officials are given authority to appoint clerks and deputies on like recommendations of the county chairmen, but these shall likewise be equally divided between the two major political parties. The state and local health officers are required to report the names, ages, and last known addresses of deceased persons to the proper registration officers at the end of each calendar month. Beginning 65 days before and ending 29 days prior to any primary, general, or city election the board of registration in every county with a population of 80,000 or more is required to forward copies of each voter's registration record to the county chairmen of the two major political parties within 48 hours after the same are made. The registration of a voter is made permanent so long as his place of residence remains unchanged and

he exercises the right of franchise, but such registration may be canceled for failure to vote, in which event it may be reinstated on application. The act contains many other provisions but the above summary is sufficient for the purposes of this opinion.

It is contended that the act under consideration is unworkable and, therefore, void because it creates boards of registration in certain counties composed of two members of opposite political affiliations with no provisions for settling disputes between them in the event of a disagreement and because the obligations imposed upon health officers with respect to reporting deaths are impossible of performance in point of time. In support of these contentions the appellants rely on *Keane* v. *Remy* (1929), 201 Ind. 286, 168 N. E. 10, which is authority for the statement that a legislative act may be declared invalid if it does not, in some manner, provide sufficient means whereby it may be executed. This is undoubtedly true, but chapter 100 is not open to that objection. The means of execution are provided, and this court must presume that the public officers referred to in the act can and will discharge the duties imposed upon them according to law. *So. Ind. Gas & Elec. Co.* v. *City of Boonville* (1939), 215 Ind. 552, 20 N. E. (2d) 648. There may be differences of opinion as to the wisdom or efficiency of the act, but these pertain to matters of policy for which the Legislature alone is responsible.

It is also urged that the provisions of the act requiring health officers to furnish registration officials with certain information concerning the names, ages, and last known addresses of deceased persons are without the title. The title embraces the subject of "the permanent registration of voters" and is broad enough to include any matter properly relating

to that subject. We cannot say that the provisions calculated to supply registration officers with vital statistics essential to the discharge of their duties are not germane to the subject indicated by the title.

As has already been pointed out, clerks of circuit courts are made registration officers in counties with a population of less than 80,000, while in counties of a larger population provision is made for registration boards of two members. We judicially know that there are seven counties in the latter category. The appellants, therefore, say that the act transgresses Article 4, Section 23, of the State Constitution, which requires that all laws shall be general and of uniform operation throughout the State where a general law can be made applicable. Under this mandate of the Constitution it has been uniformly held that a classification of the subjects of legislation must have a reasonable basis on which to stand, and must operate equally upon all and embrace all within the class, and the reason for the classification must inhere in the subject-matter and must be natural and substantial. *Hirth-Krause Co.* v. *Cohen* (1912), 177 Ind. 1, 97 N. E. 1, Ann. Cas. 1914 C. 708. In the statute before us the classification is upon the basis of population. We think there is a natural and substantial basis for this classification which is inherent in the subject-matter with which the statute deals. The number of voters in a given county bears a direct relationship to the population, and the burdens with respect to registration will be consequently heavier in the more populous counties. This justifies more complex machinery for administering the registration law in counties with a large population.

By the terms of the act members of registration boards are required to be selected in equal numbers

from the two political parties which cast the highest and the next highest number of votes for Secretary of State in the county at the last preceding general election. In other words, no person may be eligible to serve as an officer of a registration board unless he holds membership in one of the two major political parties operating in his county. Those affiliated with minor parties and independent voters are, in effect, declared to be ineligible. This presents the question as to whether these provisions violate Section 23 of Article 1 of our Constitution, which is as follows:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

This subject was before this court in *The City of Evansville* v. *The State, ex rel. Blend* (1889), 118 Ind. 426, 435; 21 N. E. 267, 270; 4 L. R. A. 93, 97. In that case the court had under consideration the provisions of a statute requiring that officers and employees of police and fire departments in certain cities should be divided "equally between the two leading political parties of said cities" (Acts of 1889, ch. 112, § 3, p. 224.) Berkshire, J. speaking for the court said:

"The act classifies the citizens of the two cities to which it applies, as to the positions and employments on the police force and in the fire department, by requiring that all officers and employees be selected from the two leading political parties found in these cities.

"It is well known that members of probably a half-dozen political parties reside in these cities, and that a large number of citizens who belong to no particular party reside therein. All of these persons are disqualified for positions and employment in either of the departments named.

"If it is competent for the Legislature to require, as a test for position or employment under the

provisions of the act under consideration, membership in a political party or organization, it is difficult to understand why a religious or any other test may not be made.

"We are of the opinion that in so far as the act . . . prescribes a political test, it contravenes the Constitution. It is not only in violation of the spirit, but of the letter of section 23, article 1."

Within the year this court again had occasion to consider what qualifications the general assembly might impose as a condition of eligibility to hold public office. This time Elliott, C. J. wrote the opinion (Berkshire, J. dissenting on the authority of the Evansville case) and said:

"It is within the authority of the Legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience." *Hovey, Governor,* v. *The State, ex rel. Riley* (1889), 119 Ind. 386, 391; 21 N. E. 890, 891.

In the composite of these two cases we think the correct rule may be found. A statute which provides for a board or commission of a certain number, no more than a certain proportion of whose members shall belong to the same political party, imposes a limitation and not a qualification. Such statutes are, therefore, valid. *Hovey, Governor* v. *The State, ex rel. Riley, supra.* 46 C. J., Officers, § 37, p. 939. But in this State it appears to be settled that the general assembly may not exact membership in a particular party as a qualification for public office. *The City of Evansville* v. *The State, ex rel. Blend, supra.* We think the rule is sound. If the general assembly may require that certain officers shall be selected from the two parties casting the highest number of votes, no logical reason is seen why such

appointments may not be restricted to the one party which cast the largest vote at a given election. The proponents of the act before us would hardly contend that this could be done under the restrictions against special privileges found in our Constitution.

14. lar to the one now before us, held that persons selected to assist in the registration of voters could not be classified as officers and, therefore, that Section 23 of Article 1 of the Constitution was not violated by a provision that they should be selected, "as nearly as practicable, in equal numbers, from the two political parties which cast the highest and second highest vote for the secretary of state in such county at the general election last preceding. . . ." It is necessary to observe that Section 23 of Article 1 may not be restricted in its application to special privileges and immunities growing out of the election or appointment of public officers. Without determining whether the registration assistants referred to in *Blue* v. *State, ex rel. Brown, supra,* were properly classified as public officers or as temporary appointees, we are obliged to hold that the Legislature was without authority to grant special privileges or immunities with respect to them in either event. Article 1, Section 23, is a part of our Bill of Rights and its protection extends to every relationship which may be the subject of a legislative enactment. For example, it was invoked to establish the right of women to practice law in the courts of this State. *In Re Petition of Leach, Ex Parte* (1893), 134 Ind. 665, 34 N. E. 641, 21 L. R. A. 701. In so far as *Blue* v. *State, ex rel. Brown, supra,* is in conflict with this opinion it must be and is overruled.

We come next to the provisions of the act that relate to the manner of appointing registration officers. It is directed that such appointments shall be made by the judge of the circuit court upon the written recommendations of the county chairmen of the two political parties casting the highest and next highest number of votes for Secretary of State in the county at the last preceding general election. Circuit judges have no discretion whatever in making such appointments and, for all practical purposes, the county chairmen may be regarded as the responsible appointing agencies. Whether such authority may be lodged in such chairmen requires a consideration of the relationship of political parties and their officers to the government. It has been said that "a political party is an association of voters believing in certain principles of government, formed to urge the adoption and execution of such principles in governmental affairs through officers of like beliefs." *Kelso* v. *Cook* (1916), 184 Ind. 173, 196, 110 N. E. 987. In another leading case it was observed:

"As rivals for popular favor they (political parties) strive at the general elections for the control of the agencies of the government as the means of providing a course for the government in accord with their political principles and the administration of those agencies by their own adherents. According to the soundness of their principles and the wisdom of their policies they serve a great purpose in the life of a government. But the fact remains that the objects of political organizations are intimate to those who compose them. They do not concern the general public. They directly interest, both in their conduct and in their success, only so much of the public as are comprised in their membership, and then only as members of the particular organization. They perform no governmental function. They constitute no governmental agency." *Waples et al.* v. *Marrast*

(1916), 108 Tex. 5, 11, 12, 184 S. W. 180, 183, L. R. A. 1917 A. 253, 258.

Political parties have been the subject of State recognition and regulation in one form or another for many years. Laws pertaining to that subject are enacted pursuant to the police power of the State but do not have the effect of making political parties administrative agencies of the government. Such laws rest on the same foundation as those for the control of other groups and organizations, in the regulation of which the State finds a public interest.

It is likewise "generally agreed that party committeemen do not become public officers by reason of the fact that they are elected at a statutory primary election, because the duties of a. public office are in their nature public; that is, they involve in their performance the exercise of some portion of the sovereign power, whether great or small, in the performance of which all citizens, irrespective of party, are interested, either as members of the entire body politic or of some duly established division of it. Manifestly, membership in a political committee belonging to one party or another does not come within the above description of what constitutes public office, and the fact that the Legislature undertakes by statute to regulate the election and conduct of political committees does not make the office a public one. The members thereof continue to be, as before, officers of the .party which elects them, and their duties are confined to matters pertaining to the party to which they belong and which alone is interested in their proper performance." 18 Am. Jur. Elections, § 139, p. 271. *Tuck* v. *Cotton* (1927), 175 Ark. 409, 299 S. W. 613; *The People* v. *Brady* (1922), 302 Ill. 576, 135 N. E. 87; *Usilton* v. *Bramble* (1911), 117 Md. 10, 82 A. 661, Ann. Cas.

1913 E, 743; *Attorney General* v. *Drohan* (1897), 169 Mass. 534, 48 N. E. 279, 61 Am. St. Rep. 301; *Heiskell* v. *Ledgerwood* (1921), 144 Tenn. 666, 234 S. W. 1001.

In *State ex inf.* v. *Washburn* (1902), 167 Mo. 680, 688, 693, 67 S. W. 592, 593, 595, 90 Am. St. Rep. 430, 432, 436, the Supreme Court of Missouri considered the constitutionality of a statute basically like the one before us. In holding that officers of a political party could not make nominations which the Governor was required to accept, the court made two statements which we deem worth quoting:

> "Although the power here attempted to be conferred is not literally the power of appointment, yet its effect is the same, it leads to the appointment, and if the Legislature has the authority to confer the power to nominate, in the manner indicated, it has the authority to confer the power to appoint without the circumlocution, which is merely formal. If the Governor may be compelled to select one of three, he may be limited in his preference of one of two, and, either in form or in skillful practice, there might be no choice left to the executive at all. We must consider the statute, therefore, as conferring on the partisan committee the power to name the officer, for such is the effect."

> . . .

> "The act of appointing to a governmental office is in itself the exercise of a governmental function, and can be exercised only by a governmental officer. Therefore, when the power to make such appointment is conferred on a thitherto unofficial person, if the act conferring the power is valid, the person on whom it is so conferred becomes *ipso facto* a public officer."

The court concluded, as we must, that it was beyond the power of the Legislature to confer upon officers of political parties the right to make nominations binding on the appointing agency.

The requirement that registration boards in counties of 80,000 or more shall supply the county chairmen of the two major political parties with copies of █ █ registration memoranda is likewise invalid for two reasons. It is bad for classification since there is no reason why this provision should apply to the seven most populated counties of the State, to the exclusion of the other eighty-five; and it grants privileges to the members of two political parties which, upon the same terms, do not equally belong to all. These principles of constitutional law have already been fully discussed in their application to other provisions of the act and it is unnecessary to dwell further upon them.

Able *amici curiae* have suggested that to hold as we have indicated will vitiate other statutes of long standing and result in serious confusion. They point, in particular, to the fact that the members of the State Board of Election Commissioners are appointed by the Governor on the recommendations of the state chairmen of the two leading political parties. § 29-1001, Burns' 1933, § 7108, Baldwin's 1934. Such considerations cannot deter us from our duty to apply the Constitution as we find it; but no dire consequences need flow from this decision. When the Governor has made an authorized appointment, it will be presumed that the choice was his and that the same result would have been reached had there been no recommendations. The courts will not look behind the commission or the certificate of appointment to ascertain the reasons that prompted the selection. *The State, ex rel. Worrell* v. *Peelle* (1890), 124 Ind. 515, 24 N. E. 440, 8 L. R. A. 228. The case at bar comes before us on a complaint for a declaratory judgment, however, and it has been

necessary for us to consider the statute from a prospective point of view.

It may be observed that if the act had lodged the appointive power exclusively in judges of the circuit courts we would have been confronted with another serious constitutional question. The division of the powers of government into three independent and coordinate branches (Article 3, Section 1, Constitution of Indiana) suggests limitations on the authority of the Legislature to impose executive and administrative functions on the judiciary; but in view of the conclusions already reached it is not necessary for us to consider the statute from that standpoint.

For the reasons stated, chapter 100, Acts of 1941, is unconstitutional and void. The judgment is, therefore, reversed with directions to enter a declaratory judgment in conformity with this opinion.

NOTE.—Reported in 40 N. E. (2d) 115; 140 A. L. R. 455.

### ON PETITION FOR REHEARING

SHAKE, C. J.—The only proposition sought to be presented by the appellees' petition for rehearing and their supporting brief that has not already had thorough consideration is this: It is now asserted that the original opinion inferentially strikes down other statutes pertaining to the political complexion of local, county, and state election boards that have been unchallenged for more than sixty years. Arguing from this premise it is contended that there has been such acquiescence in legislation of the character embraced in chapter 100, Acts of 1941, that its constitutionality ought to be accepted.

The other acts referred to by the appellees are those relating to the appointment of members of the State

Board of Election Commissioners, (Acts 1889, ch. 87, § 16, p. 157, § 29-1001, Burns' 1933, § 7108, Baldwin's 1934) ; county boards of election commissioners, (Acts 1889, ch. 87, § 17, p. 157, § 29-1002, Burns' 1933, § 7109, Baldwin's 1934) ; precinct election boards, (Acts 1929, ch. 150, § 4, p. 471, § 29-807, Burns' 1933, § 7096, Baldwin's 1934) ; assistant poll clerks to precinct election boards, (Acts 1920, [Spec. Sess.], ch. 11, § 4, p. 41, § 29-904 Burns' 1933, § 7149, Baldwin's 1934) ; county boards of primary election commissioners, (Acts 1915, ch. 105, § 4, p. 359; 1917, ch. 117, § 2, p. 354, § 29-504 Burns' 1933, § 7190 Baldwin's 1934) ; counters for county boards of canvassers in primary elections, (Acts 1939, ch. 113, § 6, p. 559, § 29-567, Burns' 1933 [Supp.], § 7245-6, Baldwin's Supp. 1939) ; and precinct boards for primary elections (Acts 1915, ch. 105, § 5, p. 359, § 29-505, Burns' 1933, § 7191, Baldwin's 1934). Each of the above acts provides that the members of the respective boards referred to therein shall be appointed by or upon the binding recommendation of certain officers of the political parties which cast the highest and next highest vote at a preceding election.

22–24. tions. Statutes providing the machinery for holding elections proper have been enacted to give vitality to the express mandates of the Constitution of Indiana, which directs that certain public officers shall be elected by the people, fixes the qualifications of voters, and requires that all elections shall be free and equal. On the other hand, laws providing for primary elections are in the exercise of the police power of the State. *Cunningham* v. *Cokely* (1916), 79 W. Va. 60, 90 S. E. 546, L. R. A. 1917B, 718. "The words

'Primary Election' are well understood to mean the act of choosing candidates by respective political parties to fill the various offices . . ." *State* v. *Paris* (1913), 179 Ind. 446, 452, 101 N. E. 497, 499. It is the theory of our primary election laws that each participating political party holds a primary at the same time and place, with nothing in common but a single set of officers. *Kelso* v. *Cook* (1916), 184 Ind. 173, 192, 110 N. E. 987, 993, Ann. Cas. 1918E, 68, 75. No reason is seen, therefore, why the General Assembly may not provide for the active participation of the responsible officers of political parties in the conduct of their own primary elections.

It is true, as the appellees suggest, that long and unquestioned acquiescence may become under some circumstances a potent factor in determining the construction or validity of a statute. *The State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313. *City of Terre Haute* v. *Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77, 37 L. R. A. 189. We do not find it necessary to explore that field, however, because the passage of similar acts by other legislatures is insufficient to determine the validity of a statute clearly within the words of a constitutional prohibition. 11 Am. Jur., Constitutional Law § 79, p. 699. The fact that there may have been such acquiescence in the provisions of the statutes relating to the manner of selecting members of election boards as to lead to the conclusion that there may no longer be an inquiry concerning their validity would not avoid the unconstitutionality of the Registration Act of 1941, which deals with a distinct branch of the general subject of elections.

Rehearing denied.

NOTE.—Reported in 41 N. E. (2d) 354, 140 A. L. R. 455.