STATE EX REL. BUTTZ V. MARION CIRCUIT COURT, ET AL.

[No. 28,275. Filed April 9, 1947.]

*Albert Ward* and *Palmer Ward*, both of Indianapolis, for relator.

*Royse & Travis*, and *Hugh E. Reynolds*, all of Indianapolis, for respondents.

*Cleon H. Foust*, Attorney General, *Frank E. Coughlin, Robert Hollowell, Jr.*, and *Karl J. Stipher*, Deputy

Attorneys General, attorneys for State Election Board of Indiana as *amicus curiae*.

STARR, J.—This is an original action for a writ of mandate directing the respondents to appoint the relator as the Democratic member of the Board of Registration of Marion County. It appears that under and in pursuance of the Acts of 1945, ch. 208, § 50, § 29-3406, Burns' 1933 (Supp.), the Democratic County Chairman duly recommended in writing to respondent judge, the relator as a member of the Board of Registration for said county, to serve from January 1, 1947, for a term of two years or until his successor shall have been appointed and qualified. Said respondent judge now refuses to so appoint said relator although he is possessed of all the statutory qualifications for this office.

Respondents first filed a motion to dissolve the temporary writ of prohibition which issued at the time this case was started. This pleading is one not contemplated by the rules of this court. Rule 2-36, 1946 Revision, provides that no pleading other than a response shall be entertained and that this response may show any reason in law or in fact why the writ should not be obeyed. We have decided, however, for this case, we will examine said motion and treat the same as part of the response in this action.

As grounds for this motion it was respondent's contention that this court was without jurisdiction; that the act upon which this cause was founded provides for the appointment of the board of registration by the judge of the circuit court and not by the court itself; that when said judge makes the appointment he is acting not as a court but in an administrative capacity; and as there is no proceeding pending in the Marion Circuit Court involving this matter there is no judicial

proceeding to which the relator is a party upon which a writ could be issued by this court.

To justify the refusal said judge sets out in the response that after the recommendation of the county chairman he investigated the relator to determine his qualifications for service on said Board of Registration of Marion County and found that relator "was a Ward Chairman for the Democratic Party of the 24th Ward in the City of Indianapolis, Indiana; is actively engaged by virtue of such position in the partisan operation of the political party system in the State of Indiana; is a man without substantial educational qualifications and has had little or no executive or administrative experience in business or commercial fields and respondent then determined, in his discretion, that said Buttz was therefore a person who did not possess the high qualifications which respondent feels are necessary for the members of such Board of Registration." The respondent also alleges that the statute above referred to is unconstitutional to the extent that the same attempts to deprive him as judge of judicial discretion in making this appointment and that the power of appointment once given to him as judge by this statute could not be controlled by some outside person.

That part of the Acts of 1945, ch. 208, § 50, § 29-3406, Burns' 1933 (Supp.), which is involved in this proceeding, reads as follows:

"In and for any county having a population of eighty thousand (80,000) or more as shown by the last preceding United States census the judge of the circuit court in any such county shall appoint the two (2) members of said board of registration, one each from the two (2) political parties which cast the highest and the next highest number of votes for secretary of state in such county at the last preceding general election and who shall be legal voters of such county; such appointments

shall be made within ten (10) days after the judge of the circuit court shall have received the respective written recommendations for said appointments from the two county chairmen of the said two political parties the judge of the circuit court shall appoint such nominees. Such written recommendations shall be filed personally with or forwarded by registered mail to, the said judge of the circuit court in any such county not later than ten days after the taking effect of this act and the members so appointed shall serve until the first day of January, 1947. On the first day of January, 1947, and on the same day of the same month of each odd numbered year thereafter, the judge of the circuit court in any such county shall appoint such two (2) members of said board of registration upon the written recommendations of the respective county chairmen of said two political parties which shall be filed personally with, or forwarded by registered mail to, the said judge of the circuit court in any such county at least ten days prior to the time provided herein for said appointments to be made, and said members of said board of registration when so appointed and qualified shall serve for two years or until their successors shall have been appointed and qualified. Should any vacancies occur on said board they shall be filled in like manner as original appointments are made:"

The response and the brief filed in support of it call our attention to the fact that this court in the case of *Harrell* v. *Sullivan* (1942), 220 Ind. 108, 40 N. E. (2d) 115, 41 N. E. (2d) 354, decided that ch. 100 of the Acts of 1941, was unconstitutional and void. That act, insofar as the appointment of the board of registration in counties having a population of over 80,000 persons is concerned, is to all intents and purposes the same as the statute here involved. It is the contention of the relator and of the *amicus curiae* that the case of *Harrell* v. *Sullivan, supra,* was wrongly decided and that the statute involved herein is in all things valid.

In the last mentioned case this court decided that the General Assembly may not, as was here attempted, limit and narrow the right of appointment to public office to members of a particular political party and to do so is a violation of Art. 1, § 23 of the state Constitution which reads as follows:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

With this statement of the law we cannot agree when the same is applied to the case before us. It is true that this court, in the case of *The City of Evansville* v. *The State, ex rel. Blend* (1888), 118 Ind. 426, 435, 21 N. E. 267, in considering the provisions of a statute requiring that officers of police and fire departments of certain cities should be divided between the two leading political parties, said:

"The act classifies the citizens of the two cities to which it applies, as to the positions and employments on the police force and in the fire department, by requiring that all officers and employees be selected from the two leading political parties found in these cities.

"It is well known that members of probably a half-dozen political parties reside in these cities, and that a large number of citizens who belong to no particular party reside therein. All of these persons are disqualified for positions and employment in either of the departments named.

"If it is competent for the Legislature to require as a test for position or employment under the provisions of the act under consideration, membership in a political party or organization, it is difficult to understand why a religious or any other test may not be made.

"We are of the opinion that in so far as the act creates a residence qualification or prescribes a

political test, it contravenes the Constitution.. It is not only in violation of the spirit, but of the letter of section 23, article 1."

And again in considering this subject in the case of *The State, ex rel. Holt* v. *Denny, Mayor* (1888), 118 Ind. 449, 479, 21 N. E. 274, this court stated that a law limiting the right to hold police offices in cities to persons belonging to one of the two leading political parties within such city, is invalid "as it grants to a class of citizens belonging to two leading parties privileges and immunities, viz., the right to hold such police offices, that it does not confer on all citizens." We do not approve of either of the last two cases above cited as applied to the facts in this case.

The provision in the statute under consideration is merely a direction to select from the two leading political parties, which is a rule for the guidance of the appointing officer, and imposes no act or exaction upon the officer appointed. *The People ex rel.* v. *Hoffman* (1886), 116 Ill. 587, 5 N. E. 596, 8 N. E. 788; *State ex rel Jones* v. *Sargent* (1910), 145 Iowa 298, 124 N. W. 339; *Commonwealth* v. *Plaisted* (1889), 148 Mass. 375, 19 N. E. 224. If we were to hold that the statute lays down a political test it will be noted that our state Constitution nowhere prohibits a political test for public office. The only test for office which our Constitution proscribes is a religious test. Constitution of Indiana, Art. 1, § 5.

This court in *Strange* v. *Board, etc.* (1910), 173 Ind. 640, 649, 91 N. E. 242, in discussing the words "privileges or immunities" as used in said Art. 1, § 23 of our state Constitution and in § 1 of the 14th Amendment to the Federal Constitution very appropriately said:

"The courts have not attempted to define the words 'privileges or immunities' of either Constitution. They are regarded as general, abstract, personal rights: rights which are in their nature fundamental, and pertain to all citizens in free governments, and which they are entitled to enjoy throughout the several states of the Union, as well as in the state of residence: such as freedom of travel, the pursuit of any lawful vocation or of pleasure, the enjoyment of life and liberty, the acquisition of property, the right to control it in security and peace, and the right of resort to the courts for its protection, without restrictions other than those usually affecting all persons . . . there may be classifications, and rights may be conferred upon some classes and not upon others."

In the case of *Hovey, Governor* v. *The State, ex rel. Riley* (1889), 119 Ind. 386, 391, 21 N. E. 890, speaking of officers of the benevolent institutions of the state this court said:

"Offices of the class under immediate mention are not such as every elector may justly claim a right to hold solely on the ground that he is a voter and all voters are entitled to hold offices, but they are offices which the Legislature may restrict to competent persons by prescribing what shall be the qualifications of those who enter them. It is within the authority of the Legislature, by virtue of its general power, to require that the officers of this class shall be selected from different political parties, or that they shall be persons of peculiar skill and experience. It may indeed, provide for the appointment of women to this class of offices, as has been done in some instances. If we are wrong in affirming that, in this class of offices, the Legislature may prescribe particular qualifications, then the practice of all the departments has been in many instances a persistent violation of the Constitution."

The above quotation was approved in the case of *State, ex rel.* v. *Goldthait* (1909), 172 Ind. 210, 87 N. E.

133, which involved the offices of county councilman and county assessor. In our opinion this is a correct statement of the law as applied to the facts in this case.

Quoting from *State, ex rel.* v. *Goldthait, supra,* at page 218, this court said:

> "There is no constitutional or inherent right to hold office, or in citizens to vote. They are political privileges, and the conditions of office holding and of voting must be complied with. If prescribed by the Constitution they cannot be abridged; if not, the legislature may prescribe them."

See also *Mosley* v. *Board, etc.* (1929), 200 Ind. 515, 165 N. E. 241.

It has been held universally that in the absence of constitutional restrictions there may be qualifications imposed by the Legislature for holding public office. *Mechem on Public Officers,* §§ 64 to 68 inclusive.

The fact, however, that the Legislature may fix qualifications for holding public office and that not every voter may claim the unqualified right to hold any particular office, does not mean that in the fixing of such qualifications the Legislature is not bound by the equal privileges and immunities clause of the Constitution. The qualifications fixed may not be arbitrary, they must be reasonable and based upon substantial grounds which are natural and inherent in the subject matter of the legislation and the right shall belong equally to each member of the class created by such qualifications. *Fountain Park Co.* v. *Hansler* (1927), 199 Ind. 95, 155 N. E. 465.

Statutes in other jurisdictions requiring selection or appointment of public officers or agents from members of a political party similar to the statute under consideration have been upheld in the following cases:

*Commonwealth* v. *Plaisted, supra; State ex rel. Jones* v. *Sargent, supra; State ex rel. Churchill* v. *Bemis* (1895), 45 Neb. 724, 64 N. W. 348. See also 140 A. L. R. 471 Note.

Although there are authorities to the contrary we believe that the cases holding these statutes valid state the true rule. It is a reasonable classification and within the legislative intendment to promote fair elections and was designed to secure impartiality and freedom from political bias and action on the part of the board of registration.

In passing we will state that we approve the holding in the case of *Blue* v. *State ex rel. Brown* (1934), 206 Ind. 98, 188 N. E. 583, wherein this court determined that a statute was not objectionable which required deputy registration officers to be selected as nearly as practical from the two political parties which cast the highest and second highest vote for secretary of state. This was determined on the theory that these deputies are not public officers but temporary appointees and therefore do not exercise rights and privileges to which every person is entitled. We do not, however, approve of the reasoning by which this holding was arrived at for, as we have heretofore pointed out, had these appointees been considered public officers the result should have been the same.

Respondents contend that the provisions of the statute providing for the appointment of the county registration board by the judge of the circuit court is an unlawful invasion of the executive by the judicial department and in support of this contention have cited the case of *Tucker* v. *State* (1941), 218 Ind. 614, 35 N. E. (2d) 270.

In our opinion Art. 3, § 1 of the state Constitution which provides that:

> "The powers of the government are divided into three separate departments; the Legislative, the Executive including the Administrative; and the Judicial; and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

relates solely to the state government and state officers and their duties under one of the separate departments of state. *Sarlls, City Clerk* v. *State, ex rel.* (1929), 201 Ind. 88, 166 N. E. 270.

The case of *Tucker* v. *State, supra,* was dealing only with state officials and the powers of the governor. There is no attempt in that case to overrule or to explain away the many cases wherein this court has held that the Legislature has the right to empower the judge of the circuit court to make appointments such as was provided in the involved statute. As was said in *City of Indianapolis* v. *State, ex rel.* (1909), 172 Ind. 472, 478, 88 N. E. 687:

> "It is too late now, in the jurisprudence of this State, to assert that courts cannot properly exercise a power that is not strictly judicial; in fact, it may be said that no department of the state government attempts to, nor was it intended by the framers of the Constitution that it should, perform all the minor duties of a kindred and appropriate character pertaining thereto that should arise in the proper administration of local affairs. Such construction would make our system of government cumbersome and impracticable. For more than fifty years the legislature has continually conferred upon judges powers and duties of a non-judicial character, which have been upheld."

See also *Petition for Appointment of Magistrates* (1940), 216 Ind. 417, 24 N. E. (2d), 773; *St. ex rel. Sch. C. of South Bend* v. *Thompson, Aud.* (1937), 211 Ind. 267, 6 N. E. (2d) 710; *City of Terre Haute* v.

*Evansville and Terre Haute R. R. Co.* (1897), 149 Ind. 174, 46 N. E. 77.

It is well to consider the fact that prior to our decision in *Harrell* v. *Sullivan, supra,* legislation of the character under consideration which provides for the selection of local officers from the two dominant political parties and that selection be made by the judge of the circuit court has been acquiesced in and gone unchallenged in the State of Indiana for approximately sixty years last past. Under the doctrine of practical construction this circumstance should be considered a potent factor in determining the validity of the statute under consideration. *The State* v. *Gerhardt* (1896), 145 Ind. 439, 44 N. E. 469; *City of Terre Haute* v. *Evansville and Terre Haute R. R. Co., supra.*

We also held in *Harrell* v. *Sullivan, supra,* "That it was beyond the power of the legislature to confer upon officers of political parties the right to make nominations which are binding on the appointing agency." The section of our statute here involved is contrary to this pronouncement. It is clear that the Legislature intended that the circuit judge should appoint as election commissioner the person recommended by the county chairman of the party of which such person is a member.

We do not approve the above quoted statement from *Harrell* v. *Sullivan, supra.* It is our opinion that when the Legislature conferred upon the county chairman the right to make this nomination it was exercising a reasonable police regulation to promote the public welfare. *State ex rel. Milwaukee Medical College* v. *Chittenden* (1906), 127 Wis. 468, 107 N. W. 500.

Political parties through conventions and primary elections, regulated by state statutes, select our candi-

dates for the most important public offices, and in so doing are acting as state agencies and not as voluntary associations. *Smith* v. *Allwright* (1944), 321 U. S. 649, 88 L. Ed. 987, 64 S. Ct. 757. In exercising their political rights they and their representatives are essential to a republican form of government.

The selection of a county chairman under our political set up is made by the county committee and is regulated by statute. § 29-2901, Burns' 1933 (Supp.). The county committee acts in matters of major public interest as does the chairman of that committee. No persons could be more interested in securing the proper administration of our registration law than the county chairmen of the parties authorized by the act in question to so nominate. This right of nomination is a reasonable requirement for the promotion of fair elections.

In speaking of members of boards of election it has been well said "The act creating the office provides for the nomination by the state chairman of the two most powerful political parties of two of the members of the board. To insure a democratic form of government, it is necessary that there be at least two strong political parties holding different views upon political questions. . . . To insure honest elections it is essential that the county board be made up at least by the choice of both powerful political parties. The executive committees of political parties in this country act in matters of high public interest . . ." *Driscoll* v. *Sakin* (1938), 121 N. J. L. 225, 227, 1 A. (2d) 881. See also *Bullock* v. *Billheimer* (1911), 175 Ind. 428, 94 N. E. 763.

If what was said in *Tucker* v. *State, supra,* holding that the Legislature was without authority to vest sovereign power in a private agency, was intended to include

a state of facts such as we have here, we must, to that extent, disapprove of same.

Respondents insist that § 3-2201, Burns' 1946 Replacement, being the statute which grants this court the right to mandate inferior courts to perform any duty enjoined upon them by law, is not broad enough to empower this court to mandate an inferior court to perform a non-judicial ministerial act as here attempted. With this contention we cannot agree.

From the facts set out in the response it must be admitted that the relator was entitled to be appointed to the office which he seeks if the statute involved is constitutional. There is no showing by the response that there had not been a complete compliance with the statute on the part of the relator and the Democratic County Chairman; what remains to be done is but a ministerial act on the part of respondent judge which act is a duty imposed by law.

Said § 3-2201, Burns' 1946 Replacement confers upon this court, among other things, the power to issue writs of mandate to the circuit, superior, criminal, probate, juvenile or municipal courts compelling the performance of "any duty enjoined by law" upon such courts including the granting of changes of venue from the county.

It is our opinion that by the term "courts" the Legislature intended to include judges of said courts. It will be noted that this statute specifically includes granting changes of venue from the county as one of the acts that may be compelled. Our statutes on change of venue contemplate that such a change of venue can be had in vacation. §§ 2-1405, 2-1406, Burns' 1946 Replacement. To hold, therefore, that this statute does not include the duties imposed upon judges would lead to the result that this court

could not compel a change of venue which is being attempted in vacation.

The above section is an amendatory act, Acts of 1933, ch. 102, § 1. By the terms of said amendment there were added the courts above mentioned other than the circuit, superior and criminal courts otherwise this section was not changed. Prior to said last mentioned amendment this court in construing the above quoted words "any duty enjoined by law" determined that it conferred upon the Supreme Court jurisdiction to issue original writs of mandate for the purpose of supervising and controlling the actions and jurisdiction of said courts. *State ex rel.* v. *Beal* (1916), 185 Ind. 192, 113 N. E. 225.

In the last mentioned case it was held that we could mandate the judge of the Superior Court of Vigo County to render, in an appeal from the amount of assessments levied against property holders for a street improvement, a so-called judgment against the City of Terre Haute and in favor of the lien holder to the extent that said assessments were reduced, all as provided by statute. As such duty to enter said so-called judgment was clearly mandatory, under the terms of the special improvement statute, it was a ministerial act. It will be noted that there was no action pending in which the relator in that case was a party and that the act mandated was not a judicial act because, as the court pointed out, it could not be construed as a rendition of judgment against the City of Terre Haute in favor of the relator.

We conclude that the case of *Harrell* v. *Sullivan, supra,* must be and is hereby in all things overruled, and that the response filed herein is not sufficient to show cause and the respondent, Lloyd D. Claycombe, as judge of the 19th Judicial Circuit of Indiana should be and is hereby mandated and ordered to appoint this relator, Ira Buttz, as a member of the Board of Registra-

tion of Marion County to serve as such member until the first day of January, 1949, or until his successor shall have been appointed and qualified.

NOTE.—Reported in 72 N. E. (2d) 225.