[Civ. No. 74. Fourth Appellate District.—November 12, 1929.]

CHARLES A. OHLHAUSEN, Petitioner, v. G. ALBERT MILLS, City Clerk, etc., Respondent.

Joseph Seymour for Petitioner.

Alphonse E. Ganahl, *Amicus Curiae*, for Petitioner.

Eugene Best for Respondent.

BARNARD, J.—This is an original petition for a writ of mandate to compel the respondent, as City Clerk of the City of Riverside, to place the name of petitioner upon the

ballots to be used at the general municipal election, to be held in the City of Riverside on the third Tuesday of November, 1929, as a candidate for election to the office of member of the council of said city from the fourth ward thereof.

The petitioner alleges that he is a resident and qualified elector of said fourth ward in said City of Riverside; that the respondent is the duly elected, qualified and acting City Clerk of said city; that said City of Riverside is a duly organized and established city of more than 3,500 inhabitants, and that there is now in force in said city a freeholders' charter, duly ratified by the electors of said city, and approved by the legislature of the state of California on March 22, 1929; that pursuant to the provisions of said charter a primary election for the purpose of nominating candidates for city offices, including among others the office of member of the council of said city from the fourth ward thereof, was held in said city on September 17, 1929; that at said primary election there were only two candidates for member of the council for the fourth ward, and votes cast at such primary election for said particular office were canvassed and the result duly announced as follows:

| Candidates | Votes |
|---|---|
| Fred M. Lindsley | 473 |
| Charles A. Ohlhausen | 446 |
| Total | 919 |

That the petitioner herein is the same Charles A. Ohlhausen who received votes as above indicated, and that he has complied with all the requirements of law regarding a candidate for said office; that under the terms of said charter a general municipal election will be held in said city for the purpose of electing various city officers, including a member of the council from the fourth ward, on the third Tuesday of November, 1929; that said election will be a separate city election; that it is the duty of respondent, as clerk of said city to prepare, cause to be printed and provide for the use of the electors the sample and official ballots required by law for said election; that it is the duty of respondent to place upon said sample ballots, and the said official ballots, as candidates for the office of member of the council for the fourth ward of said city, to be

voted upon at said general municipal election, the names of both said Fred M. Lindsley and Charles A. Ohlhausen, being the names of the two candidates who received the highest number of votes cast for said office at said primary election; that the respondent City Clerk has prepared and caused to be printed sample and official ballots bearing only the name of one candidate for the said member of said council for the fourth ward of said city, to wit, the name of Fred M. Lindsley; that although demand had been made upon said City Clerk to place the name of petitioner upon said ballot as one of the candidates for said office, respondent has refused and still refuses to so place petitioner's name upon said ballot; that if the name of petitioner is not placed upon said sample and official ballots, the qualified electors of the fourth ward of said city will be deprived of their right to vote for any candidate other than the said Fred M. Lindsley, by writing in the name of any such other candidate; and that petitioner will be deprived of his right to have his name so placed upon the ballot to be used at said general election.

The respondent City Clerk filed a general demurrer and also an answer, the material part of which denies that it is his duty as such City Clerk to place on the official ballots and sample ballots, to be used at such general election, the name of Charles A. Ohlhausen as a candidate for member of the council for the fourth ward of said city. Because of the necessity for the utmost haste, if the decision in this matter is to be of any practical use, in view of the date of the general election involved, counsel for both parties appeared at the hearing and stipulated that all matters of time, notice and the filing of briefs should be waived, and the matter was submitted upon the argument presented at the hearing.

Section 2¾ of article II of the Constitution of California reads as follows:

"Any candidate for a judicial, school, county, township, or other nonpartisan office who at a primary election shall receive votes on a majority of all the ballots cast for candidates for the office for which such candidate seeks nomination, shall be elected to such office. Where two or more candidates are to be elected to a given office and a greater number of candidates receive a majority than the number

to be elected, those candidates shall be elected who secure the highest votes of those receiving such majority, and equal in number to the number to be elected. Where a different method of election is provided by a freeholders' charter, the charter provision shall govern.''

It is conceded that the office involved in this action is a nonpartisan office, and that the said Fred M. Lindsley received a majority of all the votes cast for this office at the primary election referred to in the petition; therefore, unless under the provisions of the charter of the City of Riverside a *different method* of election is provided, under the terms of this constitutional provision the said Fred M. Lindsley was elected at the primary election. It becomes necessary then to examine the provisions of said charter to determine whether or not a different method of election is thereby provided.

Sections and portions of sections of the charter of the City of Riverside which throw any light upon this subject are as follows:

"Sec. 186. Elections to be held in said city for the purpose of electing the officers thereof and for all other purposes, are of three kinds:

"1. General municipal elections;

"2. Special elections;

"3. Primary elections.

"Sec. 187. General municipal elections shall be held in the city as follows: The first election shall be held on the third Tuesday in November, nineteen hundred and twenty-nine; the second election shall be held on the third Tuesday in November, nineteen hundred thirty-two. Said elections shall be held on the third Tuesday of November every two years thereafter, . . .

"One member of the council from each of the third, fourth, sixth and seventh wards of the city shall be elected by the electors of said wards, and two members of the board of education shall be elected by the electors at large at the first general municipal election. . . .

"Sec. 188. The officers elected at a general municipal election shall, after they have qualified as provided in this charter, take office and enter upon the discharge of their duties at ten o'clock a. m., of the first Monday in January

next succeeding their election, or if said day falls on a holiday, then upon the day following.

"Sec. 190. The provisions of the general law of the state governing municipal elections where the same are held separate from the general state elections, are hereby adopted as the law governing city elections, and the provisions of the general laws of the state governing elections for state and county officers shall govern city elections in matters for which no provision is made in this charter, and the council and the city clerk respectively shall exercise the powers and perform the duties conferred on, or imposed by, such laws or boards of supervisors and county clerks concerning elections; provided, that where this charter makes provision relating to any matters contained in such general laws, the said charter provisions shall govern. . . .

"Sec. 191. All candidates for city offices shall be nominated at a primary election to be held on the third Tuesday in September next preceding each general municipal election, as provided for in the direct primary law of the State of California as now in force, or as may hereafter be amended, provided, however, that the council may by ordinance provide that any primary election may be consolidated with the state election held in the same year, and in such case the said primary election shall be held at the same time and place and together with said state election within the limits of the city, in accordance with the provision of any general law of the state providing for such consolidation.

"Sec. 192. When candidates for any office are nominated as specified in section 191, it is hereby provided and directed that no party name or designation shall appear on the certificates or ballots and that the names of the candidates for each office shall be arranged alphabetically on said ballot."

It will be noted that section 191 of the charter provides that all candidates for said office shall be nominated at the primary election held on the third Tuesday in September, "as provided for in the direct primary law in the State of California." That portion of the state primary law which seems to throw any light on the question here involved is a portion of section 23 thereof, which is as follows:

"Except in the case of a candidate for nomination to a judicial, school, county, township or municipal office the person receiving the highest number of votes at a primary election as the candidate for the nomination of a political party for an office shall be the candidate of that party for such office, and his name as such candidate shall be placed on the official ballot voted at the ensuing election; provided, he has paid the filing fee as required by section 7 of this act; and provided, further, that no candidate for a nomination for other than a judicial, school, county, township or municipal office who fails to receive the highest number of votes for the nomination of the political party with which he was affiliated thirty-five days before the date of the primary election, as ascertained by the secretary of state from the affidavit of registration of such candidate in the office of the county clerk of the county in which such candidate resides, shall be entitled to be the candidate of any other political party.

"In the case of a judicial, school, county, township or municipal office, the candidates, equal in number to twice the number to be elected to such office, or less, if the total number of candidates is less than twice the number of offices to be filled, who receive the highest number of votes cast on all the ballots of all the voters participating in the primary election for nomination to such office, shall be the candidates for such office at the ensuing election, and their names as such candidates shall be placed on the official ballot voted at the ensuing election; provided, however, that in case there is but one person to be elected at the November election to any judicial, school, county, or township office, any candidate who receives at the August primary election a majority of the total number of votes cast for all the candidates for such office shall be the only candidate for such office whose name shall be printed on the ballot at the ensuing election; . . . ''

If section 191 of the charter stood alone, it would seem clear that the machinery provided for taking care of the results of the primary election as outlined in the portions of section 23 of the State Primary Law as quoted, would govern; and in that event, no different method of election would be provided, and under section 2¾ of article II of the Constitution, the one receiving the majority of votes for

the office would be elected. But we have in the charter not only the provisions of section 191, but also those of section 190, in which it is especially provided that "the provisions of the general laws of the state governing elections for state and county officers" shall also govern election in this city in matters for which no provision is made under its charter. The word "elections" as here used includes both general municipal and primary elections, under the terms of section 186 of the charter. These provisions amplify section 191 of the charter, by making applicable not only the direct primary law of the state, but all the general laws of the state governing elections for state and county officers. One of these general laws is the right to write in at the general election the name of a person not nominated at the primary. Section 187 of the charter provides specifically that members of the council and other city officers are to be elected not only at a general municipal election, but at a particular general municipal election, to wit, the first one to be held under the terms of this charter, the exact day thereof being named. In thus specifically providing that the first officers be elected on a definite date, at a *general* election, which is in the charter differentiated from a *primary* election, and in specifically applying to both the primary election and the general municipal election, the machinery and method of procedure provided for not only by the state primary law, but also by the laws of the state applying to and governing the election of state and county officers at all elections, thereby including those portions of the state law permitting the writing in of the name of a person not nominated in the primary election, and in making no specific provision as to how names shall go upon the ballots after the primary election, it must be held that the framers of the charter and the people in adopting the charter had something in mind other than the application of the earlier parts of section 23 of the State Primary Law, as might be indicated in section 191 of the charter. If all they had in mind was to apply the general provisions of the State Primary Law, so far as they affect municipal elections, it would have been sufficient to leave the entire matter as provided for by section 191 of the charter; but they saw fit to insert also, and first, the additional provisions in section 190 of the charter, heretofore referred to.

Since they did not leave it entirely to be governed by the provisions of the State Primary Law, but specifically added the additional provisions, a different method of election is provided by this charter than would have been the case had section 191 of the charter stood alone. In effect, section 190 of the charter adds the word "municipal" to the latter part of the quoted portion of section 23 of the State Primary Law, and *also* makes all other state election laws, both for primary and general elections, apply to this particular city, except as otherwise provided in the charter.

Section 2¾ of article II of the Constitution excludes the operation of a part of the general law of the state, in certain circumstances, by providing that no further right to write in the name of another person exists where a certain result occurs in the primary election. But it expressly allows any particular city to provide to the contrary. While the charter involved in this case is inartificially drawn, in this particular respect, it is apparent that in its entirety it has made all the laws of the state governing both primary and general elections for all state and county officers applicable, no matter what the result at the primary, and thus a different method of election has been provided.

It is fundamental that wherever possible, a statute or code section shall be construed so as to give meaning and effect to the instrument as a whole, and to each part thereof. (Code Civ. Proc., sec. 1858.) The same rule of interpretation applies to a city charter. From the extremely hasty examination which has been made necessary by the circumstances attending this case, we are of the opinion that if all portions of this charter in question be given effect, as they should be, there is provided a different method for proceedings after the primary election than those provided for in the state primary law alone, and that this different method consists in refusing to adopt alone the first part of section 23 of the State Primary Law, as it applies to municipal elections, which provides for placing the names of the two candidates receiving the highest vote on the ballot, and in lieu thereof this charter provides for adding, in effect, the word "municipal" to the list of officers named in the latter part of the quoted portion of section 23, and for adding also all other provisions of the state law, applying to the election of state and county officers, including the

right to write in the name of a person not appearing on the ballot. . Therefore, under the circumstances set forth in the petition herein, the name of Fred M. Lindsley should alone go on the ballot, with the right preserved to the electors to write in the name of any other person if they so desire.

If our views as thus hastily formed are not correct, then the only alternative possible is to hold that there is no different method provided for in the charter of the City of Riverside than that contemplated in section 2¾ of article II of the Constitution. In that event, the constitutional provision applies and a person already having been elected to the office in question, the right of the petitioner to have his name included on the ballot necessarily fails. For the reasons given, the demurrer is sustained and the issuance of a peremptory writ as prayed for is refused.

Sloane, P. J., and Marks, J., concurred.