[Civ. No. 29375.   Second Dist., Div. One.   May 3, 1965.]

JOSEPH L. DUNCAN, Plaintiff and Appellant, v. ARLEY C. BURKE et al., Defendants and Respondents.

172

Arlo E. Rickett, Jr., for Plaintiff and Appellant.

Shirley, Johnson & Gustaveson, Marlin H. Shirley, O'Melveny & Myers, and Ray H. Lindman for Defendants and Respondents.

WOOD, P. J.—In this primary election contest, the contestant appeals from a judgment in favor of the defendants.

The contestant, Joseph L. Duncan, and eight other persons, including the two defendants, were candidates, at the primary election held in the City of Pomona on March 9, 1965, for the office of councilman for the second councilmanic district of that city.

According to the resolution of the City Council of Pomona, declaring the results of the primary election, the two defendants, Arley C. Burke and Randolph C. Wills, received the highest number of votes and were the two candidates who were entitled to have their names placed on the ballot for the general election to be held on April 13, 1965.

It appears that the ballot for the citywide primary election included the names of the nine candidates for councilman from the second councilmanic district, and that all the electors of the city were afforded the opportunity of voting for those candidates.

The contestant, Joseph L. Duncan, asserts that the city council, in canvassing the returns and declaring the results of the primary election, counted the votes of electors outside the second councilmanic district, as a part of the votes for councilman in the second district; that the votes cast by electors outside the second district should not have been counted; and that if only the votes of the electors of the second district

had been counted, the contestant would have received the highest number of votes for councilman in that district, and would have been entitled to have his name placed on the ballot for the general election.

The resolution of the council shows that the contestant received 323 votes in the second district, and that Albert E. Bassett received 283 votes therein. The resolution also shows that in the city at large (i.e., all the districts) Mr. Burke received the highest number of votes, namely, 2,595 votes; Mr. Wills received the second highest number of votes, 1,417; and that the contestant received the sixth highest number of votes, 1,090.

Contestant asserts that according to the provisions of the new charter of Pomona (adopted in January 1965), candidates for the office of councilman in each of the councilmanic districts shall be nominated by the electors of each district; that only the votes of the electors at the primary election within each district shall be counted, and that it was improper to count the votes of electors outside said district.

Contestant argues to the effect that section 401 of the charter should be interpreted as meaning that candidates for each office of councilman shall be *nominated* by the electors of each councilmanic district *at a primary election* wherein *only the electors of each such district may participate in the primary election* for the office of councilman from that particular district. In support of such argument, contestant quotes a portion of said section, namely: ''Candidates for each office of Councilman shall be nominated from such district by the electors of such district . . . .'' The remainder of the sentence so referred to is as follows: ''and shall be residents of such district *but all Councilmen shall be elected by vote of the electors of the City at large.*'' (Italics added.)

Section 401 of the charter provides: ''MAYOR AND COUNCILMEN. The elective officers of the City shall be a Mayor and four Councilmen elected at the times and in the manner provided in this Charter. The Mayor shall serve for a term of two years and until his successor qualifies. Each of the Councilmen shall serve for a term of four years and until his successor qualifies. Candidates for the office of Mayor shall be nominated from the City at large and the Mayor shall be elected by a vote of the electors of the City at large. Each office of Councilman shall be a separate office and one of such offices shall be assigned to each of the four councilmanic districts of the City. *Candidates for each office of Councilman shall be*

*nominated from such district by the electors of such district and shall be residents of such district but all Councilmen shall be elected by vote of the electors of the City at large.* The Mayor and four Councilmen in office at the time this Charter takes effect shall continue in office until the expiration of the respective terms for which they were elected and until their respective successors are elected and qualified as provided in this Charter. The term of office of each elective officer elected hereunder shall commence at the time of the official canvass and declaration of the results of the election at which he is elected.

"The Mayor shall be elected in each odd-numbered year. The Councilmen of the first and fourth councilmanic districts shall be elected in each fourth year after 1963. The Councilmen of the second and third councilmanic districts shall be elected in each fourth year after 1965." (Italics added.)

The principal question herein relates to the meaning of the word "nominated" as used in said section 401 in the sentence: "Candidates for each office of Councilman shall be *nominated* from such district by the electors of such district and shall be residents of such district but all Councilmen shall be elected by vote of the electors of the City at large." (Italics added.)

According to appellant, the word "nominated," as used therein means nominated by vote of electors of each councilmanic district at a primary election wherein only the electors of each district may participate in the primary election for councilman from that particular district.

According to respondent Wills, the word "nominated," as used therein, means nominated, pursuant to the Elections Code of California, as referred to in the charter, by filing a nomination paper, signed by the required number of qualified electors residing within a particular district, whereby the name of a candidate is placed upon the primary election ballot.

Appellant, in support of his contention above stated (to the effect that said word "nominated" means nominated at a primary election limited or restricted to a councilmanic district), cites section 1001 of the charter which provides: "PRIMARY ELECTIONS. For the purpose of *nominating* candidates *to be voted upon at the general municipal election* and for such other purposes as the Council may prescribe, *a primary election shall be held* in the City on the second Tuesday of March preceding the general municipal election." (Italics added.)

Also, in support of this contention, he cites section 1006 of the charter which provides in part: "... candidates for elective City offices *to be voted on at the general municipal election* shall be *nominated at the primary election* ....'' (Italics added.)

These provisions of sections 1001 and 1006, referred to by appellant relate to nominations for the *general election* and state that such nominations shall be made *at a primary election,* but the provisions do not relate to a method of nominating councilmanic candidates for the primary election.

Respondent Wills, in support of his contention above stated (to the effect that said word "nominated" means nominated by filing a nomination paper signed only by electors within a councilmanic district), refers to section 1005 of the charter. That section states: "NOMINATIONS BY ELECTORS. Except as otherwise provided in this Charter and, in particular, except as otherwise provided in the provisions hereof relating to the nominations of Councilmen by the electors of councilmanic districts, candidates nominated by electors for an elective office to be voted on at any primary election shall be nominated in accordance with the provisions of the Elections Code of the State of California, as the same now exist or may hereafter be amended, or superseded, governing the nomination of candidates for elective offices in general law cities.''

It thus appears from section 1005 that, except as otherwise provided in the charter, candidates nominated by electors for an office *to be voted on at any primary* shall be nominated in accordance with the provisions of the Elections Code governing nomination of candidates in general law cities. This section indicates that the "nomination" referred to is the nomination of candidates *to be voted* on at any *primary* election. The words "to be," used therein, indicate that the nomination referred to is to take place *before the primary election.* The provisions of the Elections Code, so incorporated in the charter by reference, are in chapter 2, part 2, division 12 of said code. Section 22836 of that code (which is in ch. 2) provides for nomination by filing a nomination paper. That section states: "Candidates may be nominated for any of the elective offices of the city in the manner following:.'' The section then provides for the procedure for filing nomination papers signed by qualified electors. ■ Since no primary election is held in general law cities, the Elections Code makes no provision for nomination at a primary election, but makes provision only for nomination by filing a nomination paper. ■ Pomona

is a chartered city, but as above shown (by § 1005) it has made such provisions of the Elections Code (regarding general law cities) applicable to it. With reference to the "exception" in section 1005 of the charter (relating to nomination of council-men), it is to be noted that under the provisions of the Elections Code governing general law cities, a nomination paper may be signed by electors who reside in any part of a city (see § 22836) but, under the provisions of section 401 of the charter of Pomona, candidates for councilman are to be "nominated" by the electors within a councilmanic district. Apparently the "exception" in the charter, with respect to incorporating certain provisions of the Elections Code, was made because the provisions of the Elections Code so incorpo-rated do not restrict the signing of nomination papers to electors within a particular district of a city.

Since section 1005 shows that the nomination, referred to therein, was to take place before the primary election, and since that section incorporates (subject to the noted exception) a procedure of the Elections Code for nominating candidates by filing a nomination paper, it is reasonable to conclude that under the charter it was contemplated that there be a method of nominating councilman candidates within certain districts (before the primary election), who would be entitled to have their names on the primary ballot for nomination, within the city at large, for the general election. It is apparent that the word "nominated," as used in section 1005, means nominated by filing a nomination paper. When section 401 of the charter is considered in connection with section 1005, the word "nomi-nated," as used in section 401, should be given the same mean-ing as the word "nominated" in section 1005. The word "nominated," as used in section 401 (in the provision "Candi-dates for each office of Councilman shall be nominated from such district by the electors of such district . . . .") means nominated by filing a nomination paper, signed by the required number of qualified electors residing within the district.

Further, with respect to the question as to whether it was intended that the primary election should be restricted to the particular councilmanic district, it is to be noted that section 1007 of the charter states: "ELECTION AT PRIMARY. If at the primary election any candidate . . . receives a majority of the total number of votes cast for all candidates for such office, he shall be deemed elected to such office with the same force and effect as if he had been elected at the general municipal elec-tion . . . ." In this connection reference should again be made

to the provision in section 401 (which apparently is the alleged basis for this contest), namely: "Candidates for each office of Councilman shall be nominated from such district by the electors of such district . . . but all Councilmen shall be elected by a vote of the electors of the City at large." If appellant's contention herein (that the primary election is restricted to a particular district) should be regarded as correct, then under the provisions of section 1007 if a candidate at a primary election (which is restricted to a district) should receive a majority of the votes in that district he would be elected. This would lead to the absurd result that he would have been elected (within a district or limited area of the city) notwithstanding the provision of section 401 that "all Councilmen shall be elected by vote of the electors of the City at large." Such an inconsistency is a further indication that the word "nominated," as used in section 401, was not intended to mean, as suggested by appellant, nominated at a primary election which is restricted to a particular councilmanic district.

Furthermore, it appears that the provisions of the present charter of Pomona, with respect to the nomination of councilman candidates, are substantially the same as the provisions of the prior charter of Pomona which was adopted in 1911. The present charter substituted the words "Councilmanic District" in place of the word "Ward" used in the prior charter. The prior charter (§ 6) provided that one councilman shall be nominated from each of the four wards by the electors of the ward and shall be a resident of the ward from which he is *nominated*. The prior charter (§ 96) provided for a primary election to "nominate" the candidates for the general election, unless a candidate received a majority of the votes at the primary election in which case he was elected at the primary. Section 95 of the prior charter was similar to the new section 1005 which refers to general law regarding nomination of candidates. A declaration of the city clerk of Pomona, which is attached to respondent Wills' answer herein, shows that in the various elections in Pomona during the 54 years after adoption of the prior charter, the voting for councilmanic candidates at the primary election was conducted by vote of the electors of the city at large and was not restricted to a vote within the wards or districts. In view of the similarity of the charters, it is apparent that when the new charter was adopted no change in the method of electing councilman candidates was intended.

The findings of the trial court are supported by the evidence.

■ Some of the trial court's conclusions of law are as follows: (1) The word "nominated," as used in section 401 of the charter, has reference to the mode by which the name of a candidate is placed upon the ballot, namely, by the filing of a nomination paper signed by the required number of electors as provided by section 22836 of the Elections Code.
■ (2) Both the primary election and the general election for candidates for the office of councilman are to be voted upon at elections conducted at large in the city and not solely within the councilmanic districts. These conclusions are correct.

According to statements made by counsel at the oral argument on appeal, respondent Mr. Randolph C. Wills was elected at the general election.

Section 20339 of the Elections Code requires that an appeal in an election contest be perfected in 10 days after judgment is pronounced, and that the appeal be acted upon by the reviewing court within 10 days after the appeal is filed. Judgment was pronounced on April 12, 1965. The record was filed on April 23, 1965. Oral argument on appeal was on April 27, 1965.

The judgment is affirmed.

Lillie, J., and Frampton, J. pro tem.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.