[Civ. No. 30613. First Dist., Div. One. Sept. 11, 1972.]

GEORGE L. LIVINGSTON, Plaintiff and Appellant, v.
HARLAN HEYDON, as Clerk, etc., et al., Defendants and Respondents.

■■■■■

## COUNSEL

Stephens & Ashford, Pano Stephens and Robert H. A. Ashford for Plaintiff and Appellant.

James P. O'Drain, City Attorney, Samuel V. McGrath, Assistant City Attorney, and John R. Pierce for Defendants and Respondents.

## OPINION

**ELKINGTON, J.**—This appeal concerns a superior court judgment declaring that cross (+) marks following the name of a candidate for councilman on a municipal election ballot, but not appearing in whole or in part in the "voting square" following such name, shall not be counted as votes.

The subject ballot was printed in the following form.

# MUNICIPAL BALLOT
## GENERAL MUNICIPAL ELECTION
## CITY OF RICHMOND

### TUESDAY, MAY 11, 1971

**INSTRUCTIONS TO VOTERS:** To vote for a candidate of your selection, stamp a cross (⊹) in the voting square next to the right of the name of such candidate. Where two or more candidates for the same office are to be elected, stamp a cross (⊹) after the names of all the candidates for that office for whom you desire to vote, not to exceed, however, the number of candidates who are to be elected. To vote for a person not on the ballot, write the name of such person under the title of the office in the blank space left for that purpose.

All marks except the cross (⊹) are forbidden. All distinguishing marks or erasures are forbidden and make the ballot void.

If you wrongly stamp, tear or deface this ballot, return it to the inspector of election and obtain another.

On absent voter's ballots mark a cross (⊹) with pen or pencil.

| MUNICIPAL | |
|---|---|
| **COUNCILMEN—6-Year Term** Vote For Three | |
| GARY FERNANDEZ<br>Incumbent | |
| NELLO J. BIANCO<br>Businessman | |
| RICHARD N. "DICK" NELSON<br>Incumbent | |
| GEORGE L. LIVINGSTON     +<br>Incumbent | |
| HENRIETTA (McALISTER) VESTAL<br>Community Service Representative | |
| JOHN J. SHERIDAN<br>Labor Official | |
| | |
| | |
| | |
| | |

Some of the ballots were marked, as shown superimposed on the printed ballot form above, with a cross (+) in the space immediately following the candidates' names but wholly outside and to the left of the appropriate voting square. On a recount such markings were not allowed as votes for the obviously intended candidates. Had they been so allowed appellant Livingston would have been elected. Since they were not allowed he and candidate Nelson each received the same number of votes for third place, neither being elected. The superior court judgment approved the recount proceedings and this appeal resulted.

It is conceded that the election at issue was conducted under the state's general laws governing elections within a municipality. The Charter of the City of Richmond so requires. (See *Duncan* v. *Burke,* 234 Cal.App.2d 171 [44 Cal.Rptr. 85]; *Ohlhausen* v. *Mills,* 101 Cal.App. 754 [282 P. 394].)

Unless otherwise indicated all statutory reference in this opinion will be to the state's Elections Code.

Appellant Livingston contends here, as he did in the superior court, (1) that the law requires the questioned ballot markings to be counted as votes for the obviously intended candidate, and (2) if the law does not so require, then the candidate, and those who in such manner intended to vote for him, are denied their constitutional right of equal protection of the law.

I. ■ The Legislature has demonstrated a consistent purpose that in general municipal elections, candidates are to be voted for by placing a cross (+) mark, either wholly or in part, within the *"voting square"* opposite his name on the ballot.

Section 10216 prescribing the ballot form states:

"The name of the candidate . . . shall be printed in a space three-eighths of an inch in depth, . . . with a blank space on the right thereof three-eighths of an inch square, which blank space (*called the voting square*) shall be used by the voter to designate, by stamping a cross (+) therein and after the name of the candidate, his choice of candidates." (Italics added.)

Section 22871 provides that on "the top of the face of the ballot" shall be printed:

### "INSTRUCTIONS TO VOTERS

"To vote for a candidate of your selection, stamp a cross (+) *in the voting square* next to the right of the name of that candidate. . . ." (Italics added.)

Section 14412 states: "The voter, in voting, shall stamp a cross (+) *in the voting square* after the name of every candidate for whom he intends to vote, and this shall be counted as a vote for each person after whose name the voter has stamped the cross. . . ." (Italics added.)

Some statutory relaxation is granted from the rule that the cross (+) mark shall be stamped *in the voting square.* Section 18600, relating to

"write in" votes, provides that: "Any name *written* upon a ballot shall be counted, . . . for that name for the office under which it is written, if it is written in the blank space therefor, whether or not a cross (+) is stamped or made with pen or pencil *in the voting square* after the name so written." (Italics added.) And section 17070 states that "a cross (+) made partly within and partly without *a voting square* or space, [does] not make the ballot void." (Italics added.) We find no corresponding statutory relaxation authorizing use of a cross (+) mark following a candidate's name but not, at least partially, within the voting square.

Finally, section 17070 provides: "At all elections, any ballot which is not marked as provided by law *shall be void, . . .*"

The language of the statute is clear. The questioned ballots, or at least the portions in dispute, not being marked "as provided by law" are void.

█ It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear there can be no room for interpretation, and effect must be given to the plain meaning of the language. (*Caminetti* v. *Pac. Mutual L. Ins. Co.,* 22 Cal.2d 344, 353-354 [139 P.2d 908]; *Skivers* v. *State of California,* 13 Cal.App.3d 652, 655 [91 Cal.Rptr. 707].)

While we, of course, are not to be concerned with considerations of legislative policy or wisdom (see *Estate of Horman,* 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785]), nevertheless, the statutory "voting square" requirement seems to be reasonable, and the product of sound policy. It obviously adds to the accuracy and efficiency of the vote counting process. A cross (+) mark elsewhere near the preferred candidate's name could well be overlooked, particularly if the space was well filled with printing.

A similar conclusion on similar statutory language was reached by the Supreme Court in *Sweetser* v. *Pacheco* (1916) 172 Cal. 137 [155 P. 639]. That case dealt with Political Code section 1205 (since repealed), the closely identical predecessor statute to Elections Code section 14412. Referring to a questioned ballot, the court said (pp. 140-141): ". . . all the crosses, including the only cross opposite Sweetser's name, were stamped in the rectangular space at the right of the name, but none of the stamps was either wholly or partly within the voting square. Under the law as it now is and has been ever since the year 1903, the only way in which a voter can indicate his intent to vote for a particular candidate is by stamping a cross in, or at least partly in (see Pol. Code, sec. 1211), the voting square, the provisions of section 1205 of the Political Code

being mandatory in this regard. Any other method is legally ineffectual to express an intent to vote for a particular candidate, by reason of the express language of this section providing how, and how only, the intent shall be indicated. This is made manifest by what is said by this court as to the mandatory character of section 1205 of the Political Code, in regard to the method of indicating a vote, in *Tebbe* v. *Smith,* 108 Cal. 101, 109 [49 Am.St.Rep. 68, 29 L.R.A. 673, 41 Pac. 454]; *Huston* v. *Anderson,* 145 Cal. 320, 333 [78 Pac. 626], and *Tout* v. *Hawkins,* 143 Cal. 104, 106 [76 Pac. 897]. As that section now is, the voter who has omitted to stamp his cross in, or at least partly in, the voting square, opposite the printed name of a particular candidate, has not voted for that candidate. The case is simply one of no vote."

Appellant places heavy reliance upon the earlier case of *Tebbe* v. *Smith* (1895) 108 Cal. 101 [41 P. 454], cited in *Sweetser* v. *Pacheco.* But *Tebbe* v. *Smith* concerned Political Code section 1205 as it read prior to 1903, requiring the voter to mark a cross " 'after the name of the person or persons for whom he intends to vote. . . .' " (P. 109.) Then, although there was no statutory requirement therefor, printed ballots were nevertheless furnished with voting squares after the candidate's name. The court approved ballots marked after the name of the candidate but not in the voting square. But the court said (pp. 108-109): "If we should find a provision in our statutes requiring the voter to mark the cross in the square to the right of the candidate's name we would feel constrained to adopt the rule and reasoning of the supreme court of Indiana, where such a provision exists, construing which the court said: 'If we hold this statute to be directory only, and not mandatory, we are left without a fixed rule by which the officers of election are to be guided in counting the ballots.' [¶] But our statutes contain no such mandatory provision. . . . [¶¶] It will be noted that [the statutes] make no mention of the square, and that there is not even an express direction to the clerk to place a square opposite the names of the candidates. The voter is only commanded to place the cross in the marginal space to the right of the candidate's name, and when he has done this he has complied with the mandatory provisions of the law."

Discussing *Tebbe* v. *Smith* the court in *Sweetser* v. *Pacheco, supra,* 172 Cal. at page 143, stated: "At the time of that decision, section 1205, the section providing how the voter must indicate his choice, simply provided that he shall prepare his ballot 'by marking a cross *after* the name of the person,' etc., saying nothing about a voting square, and it was held that a cross 'after the name' which was not in the voting square should be

counted. As we have seen, *the law in this particular respect has since been changed."* (Latter italics added.)

■ From such a change in the law requiring the cross (+) to be placed in the "voting square," a strong inference arises that the Legislature intended a meaning contrary to that here urged by appellant. (See *Sacramento Typographical Union No. 46* v. *State of California,* 18 Cal.App.3d 634, 638 [96 Cal.Rptr. 194]; *Farmers Ins. Exch.* v. *Geyer,* 247 Cal.App. 2d 625, 634 [55 Cal.Rptr. 861].)

*Tebbe* v. *Smith* lends no aid to appellant's cause.

■ Appellant also urges that section 14413 supports his contention. That statute provides: "Where *two or more candidates* for the same office are to be elected, and the voter desires to vote for candidates for that office, *he shall stamp a cross* (+) *after the names of all the candidates* for that office for whom he desires to vote, not exceeding, however, the number of candidates who are to be elected." (Italics added.) The obvious purpose is to make clear that one might vote for no more than the number of candidates to be elected; too many markings would make the ballot void under section 17070. And the section's requirement of "a cross (+) after the names" of the preferred candidates does not preclude the meaning of "in the voting square" for such markings would also be "after the names" of the candidates voted for. Further, it is of interest that Political Code section 1205 at the time of the *Sweetser* v. *Pacheco* decision also contained language identical to that of section 14413; yet the court's decision was in no way affected thereby.

■ Nor does *Castagnetto* v. *Superior Court,* 189 Cal. 673 [209 P. 549], support his contention. That case concerned language of section 18 of the *Direct Primary Law* (Stats. 1913, p. 1402, since repealed but reenacted in substance as § 17071) which provided that "No ballot shall be rejected for any technical error which does not render it impossible to determine the voter's choice, . . ." Because of that language the court authorized a pencilled cross (+) in the voting square instead of one made with a stamp as provided by statute. But the court pointed out that if it were dealing with Political Code section 1205 (predecessor to the statutes with which we are concerned) covering *general elections,* under *Sweetser* v. *Pacheco, supra,* 172 Cal. 137, that statutory provision would be mandatory. And *Pleasant Grove Union School Dist.* v. *Algeo,* 61 Cal.App. 660, 664 [215 P. 726], declares: "Nor is the case of *Sweetser* v. *Pacheco, supra,* modified or limited in any particular by the decision of the Supreme

Court in *Castagnetto* v. *Superior Court, . . ."* (See also *Morrison* v. *White,* 10 Cal.App.2d 266, 271 [52 P.2d 263].)

Appellant argues, and heavily emphasizes, that there can reasonably be no dispute that the irregular ballot markings were intended as votes for his candidacy. A similar argument was answered by the court in *Mc-Farland* v. *Spengler* (1926) 199 Cal. 147, 152 [248 P. 521], in this manner: "True, the intention of the voter must be ascertained, but it is not enough to find out generally the voter's intention. Such intention must be expressed in the manner prescribed by law . . . . When the method of expressing the voter's intention is prescribed by authority of law such method becomes a matter of substance. . . . In other words, the right to express one's choice of a candidate at the polls is not unrestricted. It is subject to reasonable regulation in the interest of secrecy and uniformity of the ballot and the fairness of the vote, etc."

For the reasons stated we hold that the questioned ballot markings were not required by law to be counted as votes for appellant.

II. We also find a lack of merit in the contention that so interpreted, the statute denies appellant, and the voters who cast the questioned ballots, equal protection of the law. Our reasons follow.

The "equal protection" concept is well summarized by Mr. Witkin in this manner: "The equality guaranteed by the equal protection clause is equality under the same conditions, and among persons similarly situated. The Legislature may make a reasonable classification of persons and businesses and other activities and pass special legislation applying to certain classes. The classification must not be arbitrary, but must be based upon some difference in the classes having a substantial relation to a legitimate object to be accomplished." (3 Witkin, Summary of Cal. Law (7th ed. 1960) p. 1934.)

In a related argument appellant points to section 17071 which, as did *Castagnetto* v. *Superior Court, supra,* concerns *direct primary elections* only. That section states: "At the presidential or direct primary, a ballot shall not be rejected for any technical error which does not render it impossible to determine the voter's choice, even though the ballot be somewhat soiled or defaced." Since there is no corresponding statute covering general municipal elections, it is urged that here also equal protection of law is denied voters in such elections.

The argument misconceives the nature of direct primary elections. It is said that: "Laws regulating the nomination of candidates for public office at primaries rest upon an entirely different foundation from those per-

taining to general elections." (*Harrell* v. *Sullivan,* 220 Ind. 108 [41 N.E.2d 354, 355].) They are the means by which political parties choose their candidates. In California, direct primaries are provided for by article II, section 2.5 (formerly § 2½) of the state Constitution, which authorizes the Legislature to enact appropriate laws therefor. In *Christian Nationalist Party* v. *Jordan,* 49 Cal.2d 448, 452 [318 P.2d 473, 70 A.L.R.2d 1153], the court stated: "In general, the purpose of the [constitutional] amendment was to give the Legislature a free hand in eliminating existing evils by providing for the direct nomination of candidates through an efficient primary election system in which the integrity of parties would be preserved. . . . The determination of what measures will effectuate the objects of the constitutional provision is peculiarly within the domain of the legislative department, and, the usual presumption in favor of constitutionality being applicable, the courts will not interfere if there is any theory upon which the Legislature might reasonably conclude that a statute is essential to the carrying out of those objects." (See also *Communist Party* v. *Peek,* 20 Cal.2d 536, 544 [127 P.2d 889]; *Heney* v. *Jordan,* 179 Cal. 24, 27-28 [175 P. 402]; *Socialist Party* v. *Uhl,* 155 Cal. 776, 785 [103 P. 181]; *Schostag* v. *Cator,* 151 Cal. 600, 606 [91 P. 502].)

The election laws here questioned by appellant patently afford to California's voters "equality under the same conditions and among persons similarly situated." And a distinction between the votes of those who have marked their ballots in accordance with law, and those who have not, cannot reasonably be called arbitrary.

█ We cannot say that the application of section 17071 to direct primaries only, is an arbitrary classification having no substantial relation to a legitimate object of the Legislature.

The judgment is affirmed.

Molinari, P. J., and Kongsgaard, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.